**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (216752)
tfriedman@attorneysforconsumers.com
Adrian Bacon, Esq. (280332)
abacon@attorneysforconsumers.com
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Telephone: (877) 206-4741
Facsimile: (866) 633-0228

*Attorneys for Plaintiff,*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL SILVER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING, <br><br> Defendant. | **Case No.:** 14-cv-00652 PJH <br><br> **PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT** <br><br> **DATE:** June 20, 2018 <br> **TIME:** 9:00 A.M. <br> **DEPT:** 3 <br><br> **HON. PHYLLIS J. HAMILTON** |

## <u>TABLE OF CONTENTS</u>

I.   <u>INTRODUCTION</u> ............................................................. 1

II.  <u>LEGAL STANDARD</u> ..................................................... 1

III. <u>ARGUMENT</u>................................................................... 2

     A.   AVAYA, PHEAA'S DIALING SYSTEM, IS A PREDICTIVE DIALER
        SUBJECT TO THE TCPA ..................................................... 3

        1.  <u>The District of Columbia's Circuit Court Order in</u> <u>*ACA Int'l v. Fed.*</u>
           <u>*Commc'ns Comm'n* has little effect upon this matter</u> ......................... 3

            i.  *Post-ACA International Decisions* ............................... 6

                  a.  <u>Reyes v. BCA Financial Services</u> ......................... 6

                  b.  <u>Swaney v. Regions Bank</u> ....................................... 7

                  c.  <u>Marshall v. CBE Grp., Inc.</u> .................................... 7

                  d.  <u>Herrick v. GoDaddy.com, LLC</u> ............................. 8

        2.  <u>PHEAA withholds that PHEAA's dialing system, Avaya, has been</u>
           <u>repeatedly deemed an ATDS subject to the TCPA</u> .............................. 8

            i.  *The FCC and numerous district courts have rejected PHEAA's*
               *argument* ......................................................... 9

     B.   AVAYA HAS THE CAPACITY TO LEAVE ARTIFICIAL OR PRERECORDED
        VOICE MESSAGES WHICH RENDERS PHEAA SUBJECT TO THE
        TELEPHONE CONSUMER PROTECTION ACT ......................................... 13

     C.   SILVER DID NOT CONSENT TO RECEIVE AUTOMATED TELEPHONE
        CALLS FROM PHEAA ON SILVER'S CELLULAR TELEPHONE.............. 16

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1
2
3

D.    Even If Silver Consented To The Receipt Of Automated Telephone Calls, Silver Revoked Said Consent On A Number Of Occasions Prior To Receipt Of The Telephonic Communications At Issue Herein .................................................. 21

IV.   CONCLUSION.............................................................................. 24

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## TABLE OF AUTHORITIES

**CASES**                                                      **PAGE(S)**

*Adams v. AllianceOne, Inc.*,
    2011 U.S. Dist. LEXIS 56357 ................................................................. 13

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970) .............................................................................. 1

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .............................................................................. 2

*Balthazor v. Cent. Credit Servs.*,
    2012 U.S. Dist. LEXIS 182275) ......................................................... 15

*Bianchi v. Bronson & Migliaccio, LLP*,
    09-61164 CIV-UNGARGO (2010) ................................................. 6, 7

*Breslow v. Wells Fargo Bank, N.A.*,
    857 F. Supp. 2d 1316 (2012) ............................................................... 13

*Bruner v. United States*,
    343 U.S. 112 (1952) .............................................................................. 4

*CE Design Ltd. V. Prism Bus. Media, Inc.*,
    606 F.3d 443 (7th Cir. 2010) ............................................................... 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................. 1

*Connelly v. Hilton Grand Vacations Co.*,
    2012 U.S. Dist. LEXIS 81332 ............................................................. 13

*Doe v. Round Valley Unified Sch. Dist.*,
    873 F. Supp. 2d 1124 (2012) ............................................................... 13

*Fini v. Dish Network, L.L.C.*,
    2013 U.S. Dist. LEXIS 101829 ........................................................... 15

*Gager v. Dell Fin. Servs., LLC*,
    727 F.2d 265 (3d Cir. 2013) ....................................................... 14, 15, 20

*Griffith v. Consumer Portfolio Serv.*,
    838 F. Supp. 2d 723 (2011) ........................................................... 6, 10

*Gutierrez v. Barclays Group*,
    2011 U.S. Dist. LEXIS 12546 ..................................................... 13, 17, 20

*Harris v. World Fin. Network Nat'l Bank*,
    867 F. Supp. 2d 888 (2012) ................................................................. 5

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Fortyune v. American Multi-Cinema, Inc.,*
  364 F.3d 1075 (9th Cir. 2004) .................................................................. 1

*Hernandez v. Collection Bureau of Am., Ltd.,*
  2014 U.S. Dist. LEXIS 140661 ................................................................ 8

*Hickey v. Voxernet LLC,*
  887 F. Supp. 2d 1125 (2012) ................................................................... 7

*Hicks v. Client Servs., Inc.,*
  2009 U.S. Dist. LEXIS 131193 .............................................................. 13

*Iniguez v. The CBE Group,*
  969 F. Supp. 2d 1241 (2013) ........................................................... 10, 14

*In re Pacific-Atlantic Trading Co.,*
  64 F.3d 1292 (9th Cir. 1995) ........................................................... 10, 12

*Landgraf v. USI Film Products,*
  511 U.S. 244 (1994) ........................................................................... 3, 4

*Levy v. Receivables Performance Mgmt.,*
  2013 U.S. Dist. LEXIS 135675 .............................................................. 14

*Long v. County of Los Angeles,*
  442 F.3d 1178 (9th Cir. 2006) ................................................................ 2

*Loveless v. A1 Solar Power, Inc.,*
  2015 U.S. Dist. LEXIS 96429 ................................................................. 8

*Manno v. Healthcare Revenue Recovery Group, LLC,*
  289 F.R.D. 674 (2013) .......................................................................... 15

*Mashiri v. Ocwen Loan Servicing, LLC,*
  2013 U.S. Dist. LEXIS 15434 ................................................................ 15

*Mey v. Honeywell Int'l, Inc.,*
  2013 U.S. Dist. LEXIS 45265) ............................................................... 16

*Meyer v. Portfolio Recovery Associates, LLC,*
  707 F.3d 1036 (2012)......................................................................... 4, 7

*Mims v. Arrow Fin. Servs. LLC,*
  132 S. Ct. 740 (U.S. 2012)...................................................................... 1

*Munro v. King Broad. Co.,*
  2013 U.S. Dist. LEXIS 16308 ................................................................ 17

*Nelson v. Santander Consumer USA, Inc.,*
  931 F. Supp. 2d 919 (2013) ............................................................... 6, 11

*Nissan Fire & Marine Ins. Co. v. Fritz Companies,*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

210 F.3d 1099 (9th Cir. 2000) .................................................................. 1

*Osorio v. State Farm Bank, F.S.B.,*
746 F.3d 1242 (11th Cir. 2014) ............................................................. 20

*Pollock v. Bay Area Credit Serv., LLC,*
2009 U.S. Dist. LEXIS 71169 ............................................................... 13

*Robinson v. Midland Funding, LLC,*
2011 U.S. Dist. LEXIS 40107 ................................................................. 9

*Satterfield v. Simon & Schuster, Inc.,*
569 F.3d 946 (9th Cir. 2009) ......................................................... passim

*Scarborough v. Atlantic Coast Line R. Co.,*
178 F.2 253 (4th Cir. 1950) .................................................................. 16

*Sepehry-Fard v. Dep't Stores Nat'l Bank,*
2013 U.S. Dist. LEXIS 175320) ............................................................ 15

*Sherman v. Yahoo! Inc.,*
2014 U.S. Dist. LEXIS 13286 ................................................................. 9

*Sherman v. Yahoo! Inc.,*
2015 U.S. LEXIS 16177 ........................................................................ 10

*Soremkum v. Thrifty Payless, Inc.,*
509 F.3d 978 (9th Cir. 2007) .................................................................. 1

*Stegall v. Citadel Broad, Inc.,*
350 F.3d 1061 (9th Cir. 2003) ................................................................ 2

*Stemple v. QC Holdings, Inc.,*
2013 U.S. Dist. LEXIS 99582 ............................................................... 15

*Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn.,*
322 F.3d 1039 (9th Cir. 2002) ................................................................ 2

*Tovar v. Midland Credit Mgmt.,*
2011 U.S. Dist. LEXIS 40103 ................................................................. 9

*U.S. v. First City Nat. Bank of Houston,*
386 U.S. 361 (1967) ............................................................................ 14

*Vance v. Bureau of Collection Recovery LLC,*
2011 U.S. Dist. LEXIS 24908 ................................................................. 6

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## I.    **INTRODUCTION**

"[T]he [Telephone Consumer Protection Act] is a remedial statute intended to protect consumers from unwanted automated telephone calls…, [and] it should be construed in accordance with that purpose." *Van Patten v. Vertical Fitness Grp., L.L.C.*, 847 F.3d 1037, 1047 (9th Cir. 2017).   For the second time, Defendant PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING ("PHEAA") seeks summary judgment, or partial summary judgment, in this matter in an effort to nullify the unambiguous protections offered by the TCPA.   [ECF No. 67].   In so doing, PHEAA ignores that each of the arguments asserted in PHEAA's Second Motion for Summary Judgment were already considered and rejected by the Ninth Circuit. *See Silver v. Pa. Higher Educ. Assistance Agency*, 706 Fed. App'x 369 (9th Cir. Dec. 7, 2017).[1]   Therein, the Ninth Circuit concluded that "disputed issues of material fact preclude summary judgment on each of the alternative grounds presented" by PHEAA.   *Id*. at 371.   Thus, Plaintiff NEIL SILVER ("Silver") respectfully requests this Court likewise deny PHEAA's Motion in its entirety since PHEAA is reasserting the same arguments that were previously rejected by the Ninth Circuit.

## II.   **LEGAL STANDARD**

Summary Judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to Judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the

---

[1] *See also Gordon v. Virtumundo, Inc.,* 575 F.3d 1040, 1047 (9th Cir. 2009) (In reviewing grant of motion for summary judgment, appellate court assesses whether supported by *any basis* in the record).

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn.*, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). On a Motion for Summary Judgment, the evidence of the opposing party is to be taken as true, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson,* 477 U.S. at 255; *Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003).

## III.   ARGUMENT

PHEAA's Motion should be denied because (A) PHEAA's dialing system has repeatedly been deemed an "automatic telephone dialing system" subject to the TCPA; (B) even if PHEAA's dialing system is not deemed an ATDS, said system is subject to the TCPA since it presently utilizes prerecorded messages; (C) Silver did not provide prior express consent to receive autodialed telephonic communications from PHEAA; and, (D) even if consent was provided at one time, Silver repeatedly revoked any such consent prior to receipt of the telephonic communications at issue herein.  Thus, PHEAA's Motion should be denied in its entirety.

PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### A.   AVAYA, PHEAA'S DIALING SYSTEM, IS A PREDICTIVE DIALER SUBJECT TO THE TCPA.

According to the Ninth Circuit, PHEAA's Motion should be denied because there is a triable issue of fact with regard to PHEAA's usage of an "automatic telephone dialing system" ("ATDS"). *Silver*, 706 Fed. App'x at 371. An ATDS is defined as "equipment which has the *capacity* (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers" (47 U.S.C. § 227(a)(1) (emphasis added)), or with an artificial or prerecorded voice (*Id*. at § 227(b)(1)(A)).[2]  PHEAA's arguments on this issue should be rejected because (1) PHEAA mistakenly relies upon the D.C. Circuit Court's Order in *ACA International*; (2) PHEAA withholds that PHEAA's dialing system, Avaya, has been repeatedly deemed an ATDS subject to the TCPA; and, (3) PHEAA's usage of an admitted "predictive dialer" subjects PHEAA to the TCPA.

### 1.   <u>The District of Columbia's Circuit Court Order in *ACA Int'l v. Fed. Commc'ns Comm'n* has little effect upon this matter.</u>

PHEAA extensively discusses the D.C. Circuit Court's Order in *ACA Int'l v. Fed. Commc'ns Comm'n* without acknowledging that its holding has little impact on this matter. [Motion, 10:13 - 13:4].  Therein, the D.C. Circuit considered whether a 2015 Declaratory Ruling issued by the FCC was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under

---

[2] *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. Cal. 2009) ("When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the **capacity** to store or produce telephone numbers to be called, using a random or sequential number generator. Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.") (internal quotations omitted).

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).  In other words, the sole matter before the D.C. Circuit in *ACA International* was a Hobbs Act appeal from the 2015 FCC Order.

In a Hobbs Act appeal, the court only has authority "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" final FCC orders. 28 U.S.C. § 2342.  Of importance in this matter, *ACA International* has no effect upon the 2003 FCC Order; the 2008 FCC Order; or, the 2012 FCC Order,[3] each of which negate PHEAA's arguments.  That *ACA International* set aside only the 2015 Order is clear from the decision's second paragraph, which notes that the petitioners:

> seek review <u>of a 2015 order</u> in which the Commission sought to clarify various aspects of the TCPA's general bar against using automated dialing devices to make uninvited calls.

*ACA International*, 885 F.3d at 691 (emphasis added).  *See also id.* at 695 ("Applying [the APA's] standards to petitioners' four sets of challenges <u>to the Commission's 2015 Declaratory Ruling</u>, we set aside the Commission's explanation of which devices qualify as an ATDS") (emphasis added), and 701-703 (repeatedly referring to flaws in 2015 Order).  Thus, nothing in *ACA International* overturned the 2003 and 2008 Orders.  Moreover, *ACA International* does not even mention the 2012 Order, so *ACA International* cannot possibly be interpreted as overturning it.

As these three pre-2015 orders are still in effect, the Hobbs Act makes them binding on the courts. Jurisdiction to determine the validity of final FCC orders is vested exclusively in the courts of appeal through a Hobbs Act petition filed

---

[3] *See In re* Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 at 18 FCC Rcd. 14014 (F.C.C. July 3, 2003) ("2003 FCC Order"); 23 FCC Rcd. 559 (F.C.C. Jan. 4, 2008) ("2008 FCC Order"); and, 27 FCC Rcd. 15391 (F.C.C. Nov. 29, 2012) ("2012 FCC Order").

PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

within sixty days after the order's entry. 28 U.S.C. §§ 2342, 2344, 2349(a); 47 U.S.C. § 402.  Except when exercising jurisdiction under the Hobbs Act, courts cannot determine that an FCC final order is invalid.  *Federal Communications Comm'n v. ITT World Communications, Inc.*, 466 U.S. 463, 468-469, 104 S. Ct. 1936, 80 L. Ed. 2d 480 (1984).  In this regard, the Ninth Circuit has twice held that the Hobbs Act precludes challenges to FCC orders except by direct appeal.  *U.S. W. Communications, Inc. v. Jennings, 304 F.3d 950, 958 n.2 (9th Cir. 2002)* ("The Hobbs Act . . . requires that all challenges to the validity of final orders of the FCC be brought by original petition in a court of appeals. The district court thus lacked jurisdiction to pass on the validity of the FCC regulations, and no question as to their validity can be before us in this appeal."); *U.S. W. Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1120 (9th Cir. 1999). *See also Baird v. Sabre, Inc.*, 636 Fed. Appx. 715, 716 (9th Cir. 2016) (Hobbs Act precludes challenge to FCC's interpretation of "prior express consent").

Neither *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) nor *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009), in which this court applied *Chevron* deference instead of the Hobbs Act standard to TCPA questions, undermines the conclusion that the Hobbs Act makes FCC orders binding on the courts.  Both upheld the FCC's orders, so it was not necessary for the court to consider how they would fare under the even more deferential Hobbs Act standard.  To hold otherwise would be contrary to the weight of authority from other circuits that FCC orders regarding the TCPA are binding except through a Hobbs Act appeal.  *See*, *e.g.*, *Carlton & Harris Chiropractic, Inc. v. PDR Network*, 883 F.3d 459 (4th Cir. 2018); *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016).  Thus, PHEAA's Motion should be denied pursuant to the Ninth Circuit's previous Order as well as the previous FCC

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Orders.

### i.   *Post-ACA International Decisions*

Silver's counsel has identified the following post *ACA International* decisions that have substantively addressed the arguments at issue herein: (a) *Reyes*; (b) *Swaney*: (c) *Marshall*; and, (d) *Herrick*.

### a.   Reyes v. BCA Financial Services

In *Reyes*, the Southern District of Florida found that BCA Fin. Servs. violated the TCPA by utilizing a predictive dialer to contact Reyes on Reyes' cellular telephone without prior express consent.   *Reyes v. BCA Fin. Servs.*, No. 16-cv-24077, 2018 U.S. Dist. LEXIS 80690, at *38-39 (S.D. Fla. May 14, 2018) ("In sum, the Court grants summary judgment in Reyes' favor on the ATDS issue, finding that the Noble predictive dialer, as used by BCA Financial, was an ATDS as a matter of law.").

In so ruling, *Reyes* explained that the 2003 FCC Order found that "a predictive dialer falls within the meaning and statutory definition of [an ATDS] and the intent of Congress."   *Id*. at *14 citing to *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14,014, 14,093 (2003).   As defined by the 2003 FCC Order, a predictive dialer is "an automated dialing system [that] uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."   *Id*.

Furthermore, "the FCC issued a declaratory judgment [in 2008] that 'affirmed that a predictive dialer constitutes an automatic telephone dialing system that is subject to the TCPA's restrictions on the use of autodialers."   *Id*. at *16 citing to *In re Rules & Regulations Implementing the Telephone Consumer*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

*Protection Act of 1991*, 23 FCC Rcd. 559, 566 (2008).

Finally, the FCC "reiterated [in 2012] that the TCPA's definition of an ATDS 'covers any equipment that has the specific *capacity* to generate numbers and dial them without hum intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *Id*. at *17 citing to *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 (2012).

*Reyes* concluded that only the 2015 FCC Order was overruled by *ACA International* which left the 2003; 2008; and, 2012 FCC Orders in effect. *Id*. at *32-33. Since these FCC Orders unequivocally hold that predictive dialers constitute an ATDS subject to the TCPA, this Court should also deny PHEAA's Motion.

### b. **Swaney v. Regions Bank**

Likewise, *Swaney* agreed that *ACA International* "invalidated certain portions of the 2015 FCC Order, but not the portion of the Order reaffirming the FCC's 2003 determination that, 'while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." *Swaney v. Regions Bank*, No. 2:13-cv-544 JHE, 2018 U.S. Dist. LEXIS 85217, at *3 (N.D. Ala. May 22, 2018) citing to *ACA International*, 885 F.3d at 702. "In light of *ACA International*, that proposition still stands." *Id*. Thus, *Swaney* also supports Silver's position that PHEAA's Motion should be denied.

### c. **Marshall v. CBE Grp., Inc.**

Silver anticipates that PHEAA will rely upon *Marshall v. CBE Grp., Inc.* to support PHEAA's position that PHEAA does not utilize an ATDS. *See Marshall v. CBE Grp., Inc.*, No. 2:16-cv-2406 GM (NJK), 2018 U.S. Dist. LEXIS 55223

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

(D. Nev. Mar. 30, 2018). However, CBE utilized a Manual Clicker Application ("MCA") to place telephonic communications to debtors, not a predictive dialer as used by PHEAA. *Id*. at \*12-13. The Court granted CBE's Motion on the grounds that "the overwhelming weight of authority applying this element hold that 'point-and-click' dialing systems, paired with a cloud-based pass-through service, do not constitute an ATDS as a matter of law in light of the clicker agent's human intervention.'" *Id*. at \*18. As such, any reliance upon *Marshall* to support PHEAA's position is misplaced

As discussed below, predictive dialers are subject to the TCPA since said dialing systems function without human intervention in order to place a significant number of automated calls to consumers. Thus, this Court should not consider *Marshall* in ruling upon PHEAA's Motion.

### d. <u>Herrick v. GoDaddy.com, LLC</u>

Like *Marshall*, *Herrick* considered a vastly different dialing system than PHEAA's Avaya dialer. *Herrick v. GoDaddy.com LLC*, No. 16-cv-245 PHX DJH, 2018 U.S. Dist. LEXIS 83744, at \*3-4 (D. Ariz. May 14, 2018). As such, the ultimate conclusions based upon this system are of little import herein. However, of great importance to the issues herein, *Herrick* did acknowledge that predictive dialers, the technology utilized by PHEAA, were "included in the definition of an ATDS." *Id*. at \*14.

### 2. <u>PHEAA withholds that PHEAA's dialing system, Avaya, has been repeatedly deemed an ATDS subject to the TCPA.</u>

Here, PHEAA curiously withholds the fact that PHEAA utilized an Avaya dialer in contacting Silver on Silver's cellular telephone.[4] This omission is

---

[4] PHEAA even refers to Avaya as an autodialer. [*See* Deposition Transcript of Christopher Krobath attached to the Declaration of Matthew M. Loker ("Krobath

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

suspect in light of the fact that the Ninth Circuit, as well as various District Courts throughout the Country, have determined that the Avaya dialer is subject to the TCPA. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1033 (9th Cir. 2012) (wherein the defendant argued that Avaya did not have the present capacity to store or produce numbers using a random or sequential number generator but the Ninth Circuit held that Avaya was a predictive dialer subject to the TCPA); *Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888 (E.D. Mich. 2012) (granting plaintiff's Motion for Partial Summary Judgment while deeming the Avaya dialer subject to the TCPA); *Vance v. Bureau of Collection Recovery LLC*, 2011 U.S. Dist. LEXIS 24908 (N.D. Ill. 2011) (holding that usage of Avaya dialing system rendered defendant subject to the TCPA). These cases are fatal to PHEAA's argument that Avaya does not constitute an ATDS. While ignoring said cases, PHEAA makes a number of other arguments that have also been unsuccessful for the reasons discussed below.

### i.   *The FCC and numerous district courts have rejected PHEAA's arguments.*

As stated above, the FCC has expanded the definition to include more recent developments in dialer technology, including "predictive dialers."[5]  Specifically, the 2003 FCC Opinion explained that

---

Depo.", 8:4-6].

[5] Final orders of the Federal Communications Commission are binding on the court under the Hobbs Act. 28 U.S.C. § 2342(1); 47 U.S.C.S. § 402(a). *Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723, 727 (2011); *CE Design Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446-50 (7th Cir. 2010); *Nelson v. Santander Consumer USA, Inc.*, 931 F. Supp. 2d 919, 929 (2013). Moreover, any request by PHEAA to disregard the FCC's interpretation of ATDS would "come perilously close to violating Fed. R. Civ. P. 11." *Nelson*, 931 F. Supp. 2d at 928.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

> [o]ver the last decade, the telemarketing industry has undergone significant changes in technologies and methods used to contact consumers.  The Commission has carefully reviewed the record developed in this rulemaking proceeding.  The record confirms that these marketplace changes warrant modifications to our existing rules, and adoption of new rules if consumers are to continue to receive the protections that Congress intended to provide when it enacted the TCPA.

*In the Matters & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 FCC LEXIS 3673, at *2-3, 18 F.C.C.R. 14014, ¶ 132 (Fed. Commc'n Cmm'n July 3, 2003).

Furthermore, "[i]t is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies." *Id.* at 206.  Subsequently, the FCC explained that a "predictive dialer" is

> an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call.[6]  Such software programs are set up in order to minimize the amount of downtime for a telemarketer.  In some instances, a consumer answers the phone only to hear 'dead air' because no telemarketer is free to take the call.  See *Telemarketing Sales Rule, Notice of Proposed Rulemaking*, Federal Trade Commission, 67 Reg. 4492, 4522 (January 30, 2002) (FTC Notice).

*Id.* at fn 31.

The basic function of such equipment, however, has not changed – the *capacity* to dial numbers without human intervention.[7]  *Id.*  Thus, the issue with

---

[6] As envisioned by the FCC, the Avaya dialer utilizes algorithms to ensure that Defendant's agents are constantly engaged in telephonic communications with consumers. [Krobath Depo., 21:1-12; and, 22:8-15].

[7] *See also Hernandez v. Collection Bureau of Am., Ltd.*, 2014 U.S. Dist. LEXIS 140661, at *10-11 (C.D. Cal. 2014) (denying defendant's Motion for Summary

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

predictive dialers, as explained by the FCC, is that said dialers are capable of delivering thousands of prerecorded messages in a single day. *Id*. However, these dialers "frequently abandon calls before a telemarketer is free to take the next call…[which] practice [results] in inconveniences and aggravates consumers who are hung up on." *Id*. at *13. Due to this aggravation, "there is no difference [to the recipient of the call] whether the number is dialed at random or from a database of numbers." *Id*. at *203. As such, the FCC observed that

> [t]he legislative history also suggests through the TCPA, Congress was attempting to alleviate a particular problem – an increasing number of automated and prerecorded calls…Therefore, to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result.

*Id*. at 208.

"Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *Id*. at 208-209. Moreover, this ruling was confirmed more recently by the 2008 FCC Opinion by "affirm[ing] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In re the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA International for Clarification and Declaratory Ruling*, 2008 FCC LEXIS 56, 23 FCC Rcd 55943 Comm. Reg (P & F) 877.[8] Finally, each court, including the Ninth Circuit, to

Judgment while holding predictive dialers subject to TCPA); and, *Loveless v. A1 Solar Power, Inc.*, 2015 U.S. LEXIS 96429, at *7 (C.D. Cal. 2015) (same).

[8] "The Commission found that, based on the statutory definition of 'automatic telephone dialing system,' the TCPA's legislative history, and current industry practice and technology, a predictive dialer falls within the meaning and definition

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

consider the issue has determined that a "predictive dialer" is subject to the requirements of the TCPA. *See, e.g., Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 950 (9th Cir. Cal. 2012) ("[the defendant's] predictive dialers fall squarely within the FCC's definition of 'automatic telephone dialing system'"); *Sherman v. Yahoo! Inc.*, 2014 U.S. Dist. LEXIS 13286, at * 16 (S.D. Cal. February 3, 2014) ("A predictive dialer is considered an ATDS under the TCPA"); *Robinson v. Midland Funding, LLC,* 2011 U.S. Dist. LEXIS 40107, at *14 (S.D. Cal. 2011) ("The FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers…"); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129 (W.D. Wash. 2012) (same); and, *Tovar v. Midland Credit Mgmt.*, 2011 U.S. Dist. LEXIS 40103, at *13 (S.D. Cal. 2011) ("the FCC has already determined the TCPA applies to debt collectors and the definition of 'automatic telephone dialing system' includes 'predictive dialers.'").

Here, both PHEAA and Avaya readily admit that Avaya is a predictive dialer. [*See, e.g.,* excerpts from Avaya's website attached as Exhibits 1; and, 2 to the Declaration of Matthew M. Loker; and, PHEAA's Response to Silver's Request for Admission Nos. 7; 8; and, 9[9] attached as Exhibit 3]. Moreover, during Mr. Krobath's deposition, Mr. Krobath explained that PHEAA "use[s] an Avaya predictive dialer to place outbound phone calls." [Krobath Depo., 13:8-9]. Through the use of Avaya,

---

of autodialer and the intent of Congress. The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed – the capacity to dial numbers without human intervention. The Commission noted that it expected such automated dialing technology to continue to develop and that Congress had clearly anticipated that the FCC might need to consider changes in technology. *Id*. at 22.

[9] In Response to Silver's Request for Admission Nos. 7; 8; and, 9, PHEAA admits that it made an automated call to Silver.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

PHEAA is able to place anywhere from 50,000 to 100,000 calls each and every day to consumers. [*Id*. at 19:11-13]. The "Call Pacing" feature of the Avaya Predictive Dialer permits PHEAA to increase the time PHEAA's agents spend handling calls. [*See* Exhibit 4].

Based upon the discussion above, PHEAA's dialing system, Avaya, constitutes a predictive dialer within the FCC's expanded definition of an ATDS. Unequivocally, this FCC Order is binding upon the Court pursuant to the Hobbs Act and has been followed by the Ninth Circuit and various district court cases. 28 U.S.C. § 2342(1); 47 U.S.C.S. § 402(a). *See also Sherman v. Yahoo! Inc.*, 2015 U.S. Dist. LEXIS 16177, at *7-8 (S.D. Cal. December 14, 2015) ("Since the statute's passage in 1991, the FCC has issued regulations expanding the statutory definition of an ATDS, and this Court is bound by those rulings under the Hobbs Act."); *Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723, 727 (2011); *CE Design Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446-50 (7th Cir. 2010); *Nelson v. Santander Consumer USA, Inc.*, 931 F. Supp. 2d 919, 929 (2013). Therefore, Silver requests this Court deny PHEAA's Motion.

**B.   AVAYA HAS THE CAPACITY TO LEAVE ARTIFICIAL OR PRERECORDED VOICE MESSAGES WHICH RENDERS PHEAA SUBJECT TO THE TCPA.**

As stated above, PHEAA violated the TCPA by initiating telephonic communications to Silver's cellular telephones using an ATDS **or** artificial and prerecorded voices. "Since the applicable section is written in the disjunctive, a violation may occur if any one of an automated telephone dialing system, an artificial voice, or a prerecorded voice is used to make the call." *Iniguez v. The CBE Group*, 969 F. Supp. 2d 1241 (E.D. Cal. 2013); and, *In re Pacific-Atlantic Trading Co.*, 64 F.3d 1292, 1302 (9th Cir. 1995). *See also Vaccaro v. CVS*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Pharmacy, Inc.*, No. 13-cv-174 IEG (RBB), 2013 U.S. Dist. LEXIS 99991, at *4 n.2 (S.D. Cal. July 16, 2013) ("Because the provision is written in the disjunctive, plaintiffs can state a claim under the TCPA by alleging the use of (1) an "artificial or prerecorded voice" *or* (2) an ATDS (emphasis in original)."

In this matter, Krobath's deposition testimony in conjunction with the Avaya manual provided in discovery unambiguously established that Avaya utilizes prerecorded messages.[10]  As discussed below, PHEAA's dialing system is subject to the TCPA due to the usage of artificial and prerecorded messages.

Here, Krobath testified that Avaya is capable of leaving various types of messages by explaining that

> You can record a message in advance.  You can have a message that will play to a consumer when it detects an answering machine.  And you can also set up messages to play if...if a user is waiting in an outbound queue...

[Krobath Depo., 27:18-23].[11]  While the Avaya system is constantly being updated, Krobath admitted that Avaya was capable of sending prerecorded messages in 2013; and, 2014, the years that Silver received telephonic communications from PHEAA.  [*Id*. at 31:5-17].  Similarly, the Avaya manual produced by PHEAA in discovery confirmed Avaya's ability to utilize prerecorded messages.[12]

---

[10] "Under both the statute and the order, the question is not how the defendant made a particular call, but whether  the system it used had the 'capacity' to make automated calls. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ('(A) system need not actually store, produce, or call randomly or sequentially generated numbers, it need only have the capacity to do it.'). Because it is undisputed that Nightengale's testimony establishes that capacity, I conclude that plaintiff is entitled to summary judgment on this claim." *Nelson v. Santander Consumer USA, Inc.* (W.D.Wis. 2013) 931 F.Supp.2d 919, 930.

[11] *See also* Krobath Depo., 28:22-25, explaining that the prerecorded messages "are very generic.  [The prerecorded message] states [PHEAA's] hours, who is calling, and that it is important that they return our call."

[12] *See* Exhibit 5.

PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## Messages and scripts

Messages are the recordings that are played to customers when they are on hold, waiting for an agent, or when an agent plays a message. Scripts are a series of messages that customers hear in the inbound, outbound, and transfer wait queues.

Messages provide the following functions:

140   Administering Avaya Proactive Contact

**PHEAA00458**

Understanding jobs

- Assure customers that their calls remain connected
- Prepare customers for the upcoming transaction, asking them to have credit cards and order numbers ready
- Answer frequently asked questions
- Promote the business
- Advertise new products and services

You can only create messages and scripts if you have administrative privileges.

## Messages

Messages are the recordings that are played to customers when they are on hold, waiting for an agent, or when an agent plays a message.

Note:
On Avaya Proactive Contact with PG230, your recorded voice messages must be digitized for Avaya Proactive Contact to use them.

As such, PHEAA violated the TCPA by utilizing a system that has the capacity to leave artificial or prerecorded voice messages for consumers. Since this section is written in the disjunctive, this Court may determine that PHEAA violated the TCPA even if this Court determines that PHEAA's predictive dialer is not subject to the TCPA. *See In re Pacific-Atlantic Trading Co.*, 64 F.3d 1292, 1302 (9th Cir. 1995). Thus, PHEAA's Motion should be denied.

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### C.   SILVER DID NOT CONSENT TO RECEIVE AUTOMATED TELEPHONE CALLS FROM PHEAA ON SILVER'S CELLULAR TELEPHONE.

According to the Ninth Circuit, PHEAA's Motion should be denied because there is a triable issue of fact with regard to the issue of consent. *Silver*, 706 Fed. App'x at 371.  The burden of proving the affirmative defense of prior express consent lies with the defendant. *See Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 (9th Cir. Cal. 2011) ("'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof.")  Indeed, the FCC ruled as early as 2007 that "the creditor should be responsible for demonstrating that the consumer provided prior express consent." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 565 (Dec. 28, 2007).  This was confirmed in the FCC's February 15, 2012 declaratory ruling explaining, "should any question about the consent arise, the seller will bear the burden of demonstrating that … unambiguous consent was obtained." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1844 (Feb. 15, 2012).[13]

Moreover, numerous courts, including California District Courts, have placed the burden of proving prior express consent on the defendant. *See Adams v. AllianceOne, Inc.*, 2011 U.S. Dist. LEXIS 56357, at *6, (S.D. Cal. May 25, 2011) (ordering defendant to produce evidence of the "prior express consent affirmative defense"); *Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332, *9 (S.D. Cal. June 11, 2012) ("Whether Plaintiffs gave the required prior

---

[13] Traditionally, consent in common law tort cases has been treated as a defense. *See Doe v. Round Valley Unified Sch. Dist.*, 873 F. Supp. 2d 1124, 1130 (D. Ariz. 2012) ("consent is generally a defense to common law tort claims") (citing *Restatement (Second) of Torts* § 892A (1979)).

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

express consent is an affirmative defense to be raised and proved by a TCPA defendant, however, and is not an element of Plaintiffs' TCPA claim."); *Gutierrez v. Barclays Group*, 2011 U.S. Dist. LEXIS 12546, *2 (S.D. Cal. Feb. 9, 2011) (placing the burden on the creditor to establish prior express consent); *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. April 12, 2012) ("the prior express consent exemption acts as an affirmative defense"); *Pollock v. Bay Area Credit Serv., LLC*, 2009 U.S. Dist. LEXIS 71169, *26 (S.D. Fla. Aug. 12, 2009) ("The burden of establishing prior express consent is on the Defendant. FCC RULE 07-232."); *Hicks v. Client Servs., Inc.*, 2009 U.S. Dist. LEXIS 131193, 2009 WL 2365637, *5 (S.D. Fla. June 10, 2009) ("The burden of establishing prior express consent i[s] on the Defendant. FCC RUL. 07-232."); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 730 (S.D. Tex. 2011) ("in the view of the FCC, consent under the TCPA is an affirmative defense").

Although the Ninth Circuit Court of Appeals stated, in dicta, in *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 949 (9th Cir. Cal. 2012) that "prior express consent" is an element of a TCPA claim, the burden of proof remains with the defendant.[14] The *Meyer* decision does not expressly state that the burden should be born by the plaintiff. In fact, the Ninth Circuit Court of Appeals in the same *Meyer* decision cites the FCC's 2008 declaratory ruling which clearly placed the burden of prior express consent on the defendant. *Meyer*, 696 F.3d at 948. Thus, the *Meyer* decision did not, in any way, disapprove of the FCC's position that the defendant is in the best position to prove prior express consent; indeed, the Ninth Circuit Court of Appeals followed the FCC's limited ruling regarding prior express consent in the debt collection context.

---

[14] "With respect to the third element, the defendant bears the burden of proof with respect to 'prior express consent.'" *Meyer v. Portfolio Recovery Assocs., LLC*, 2011 U.S. Dist. LEXIS 156610, *23 (S.D. Cal. Sept. 14, 2011).

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Additionally, the United States Supreme Court has explained that where one claims the benefit of an exception to the prohibition of a statute, that party carries the burden of proof. *See U.S. v. First City Nat. Bank of Houston*, 386 U.S. 361, 366 (1967). Prior express consent is an express exception to a TCPA claim under 47 U.S.C. § 227(b)(1)(A). *See Iniguez v. CBE Group*, 2013 U.S. Dist. LEXIS 127066, *11 (E.D. Cal. Sept. 5, 2013) ("The only statutory exceptions to the wireless number prohibition are calls made for emergency purposes or with the prior consent of the call recipient."); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. Pa. 2013).

Significantly, numerous post-*Meyer* cases continue to place the burden of proving prior express consent on the defendant. *See Levy v. Receivables Performance Mgmt., LLC*, 2013 U.S. Dist. LEXIS 135675, *18-19 (E.D.N.Y. Sept. 23, 2013) ("The TCPA explicitly exempts from liability autodialed calls to a cell phone 'made with the prior express consent of the called party.' 47 U.S.C. § 227(b)(1)(A). 'Prior express consent' is, therefore, an affirmative defense to an alleged TCPA violation, for which the defendant bears the burden of proof."); *Mashiri v. Ocwen Loan Servicing, LLC*, 2013 U.S. Dist. LEXIS 154534, *14 (S.D. Cal. Oct. 28, 2013) ("arguing that the Plaintiff provided prior express consent is an affirmative defense which does not defeat the elements of Plaintiff's claim."); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 2013 U.S. Dist. LEXIS 175320, *36 (N.D. Cal. Dec. 13, 2013) ("consent is a defense that does not need to be plead by plaintiff."); *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 685 (S.D. Fla. 2013) ("The TCPA prohibits automated calls to cellular phones without the prior express consent of the party being called. *See* 47 U.S.C. § 227(b)(1)(A). Thus, consent is a defense to a TCPA claim."); *Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582, *19 (S.D. Cal. June 17, 2013)

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

("Prior express consent is an affirmative defense and thus Defendant bears the burden of proof." (citing *Grant*, 449 Fed. Appx. 598 at fn. 1); *Balthazor v. Cent. Credit Servs.*, 2012 U.S. Dist. LEXIS 182275, *14-15 (S.D. Fla. Dec. 27, 2012) ("the defendant will ultimately bear the burden of establishing prior express consent"); *Fini v. Dish Network, L.L.C.*, 2013 U.S. Dist. LEXIS 101829, *18 (M.D. Fla. Mar. 6, 2013) ("The FCC has conclusively determined that 'the creditor should be responsible for demonstrating that the consumer provided prior express consent,' so it was not Plaintiff's burden to disabuse Defendant of the notion that it was calling a consenting customer.") (citing *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 565 (FCC Jan. 4, 2008)).

Lastly, from a policy perspective, the burden of proving prior express consent rightly lies with the entity placing calls, as "[t]he TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. Pa. 2013) (citing S. Rep. 102-178, at 5 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1972; and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. Cal. 2009) (discussing TCPA's purpose of curbing calls that are a nuisance and an invasion of privacy)). "As such, it 'should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers.'" *Mey v. Honeywell Int'l, Inc.*, 2013 U.S. Dist. LEXIS 45265, *3-4 (S.D. W. Va. Mar. 29, 2013) (citing *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1950)). Therefore, the TCPA defendant bears the burden of proving the existence of prior express consent.

Here, PHEAA asserts that Silver verbally consented to receive autodialed telephone calls on Silver's cellular telephone during a conversation that took place

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

on February 5, 2013.  [PHEAA's Motion, 10:8-11].  The sole evidence that PHEAA relies upon in an attempt to satisfy PHEAA's affirmative defense is attached to PHEAA's moving papers as Exhibit G to the Declaration of Marc Bitsko [ECF No. 47-1].  Said Exhibit, which is a difficult to read, is an image allegedly taken of the account notes associated with Silver's account:



Upon review of this image, it is apparent that this screenshot that PHEAA relies upon for prior express consent does not state anywhere that Silver consented to the telephonic communications at issue herein.  It merely states that Silver was "advised of [the] TCPA."  Notably, PHEAA did not provide the recording of the February 5, 2013 telephonic communication wherein Silver allegedly provided prior express consent despite testifying that PHEAA records PHEAA's telephonic communications with consumers through a software called "NICE."  [Krobath Depo., 10:8-19].  Not only does this image fail to "clearly and unmistakably" establish Silver's consent, it fails to establish any consent of any kind.  Thus, PHEAA's Motion should be denied.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**D.**     **Even If Silver Consented To The Receipt Of Automated Telephone Calls, Silver Revoked Said Consent On A Number Of Occasions Prior To Receipt Of The Telephonic Communications At Issue Herein.**

The 2015 FCC Opinion unequivocally explained that "a called party may revoke consent at any time and through any reasonable means." *See* 2015 FCC Lexis 1586 (July 10, 2015) (the "2015 FCC Order") at \*83.  In addition, "[a] caller may not limit the manner in which revocation may occur."  *Id.*  The FCC based this position on various District and Appellate Courts decisions[15] and explained that refusing to allow consumers to revoke consent "would lock consumers into receiving unlimited, unwanted texts and voices calls [and] is counter to the consumer-protection purposes of the TCPA and to common-law notices of consent." *Id.* at \*97.  As such, the FCC explained

> that the consumer may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept.

*Id.* at \*114.

Of note, *ACA International* "[upheld] the Commission's approach to revocation of consent, under which a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller." *ACA Int'l*, 885 F.3d at 692.  As such, this portion of the 2015 FCC

---

[15] "[T]he weight of authority suggests that consent may be revoked under the TCPA and that if messages continue after consent is revoked, those messages violate the TCPA. *See Munro v. King Broad. Co.*, 2013 U.S. Dist. LEXIS 16308, at \*6-7, 2013 WL 6185233 (W.D. Wash. Nov. 26, 2013) citing to *Gutierrez v. Barclays Grp.*, 2011 U.S. Dist. LEXIS 12536, 2011 WL 579238, at \*4 (S.D. Cal. Feb. 9, 2011).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Opinion remains in effect.

Here, PHEAA disingenuously states that Silver provided prior express consent to PHEAA by including Silver's cellular telephone number in letters and e-mails sent to PHEAA. [PHEAA's Motion, 16:3-9]. However, a mere cursory review of the written communications relied upon by PHEAA for Silver's alleged "prior express consent" actually establish that said written communications revoked any consent that PHEAA may have had to contact Silver on Silver's cellular telephone while using an autodialer or prerecorded voices.

For example, Silver's August 15, 2013 written communication attached as Exhibit L to the Declaration of Marc Bitsko [ECF No. 67-1] states in pertinent part:

> If your offices attempt telephone communication with me, including but not limited to computer generated calls and calls or correspondence sent to or with any third parties, it will be considered harassment and I will have no choice but to file suit. All future communications with me MUST be done in writing and sent to the address noted in this letter by USPS.

Similarly, Silver's October 31, 2013 written communication attached as Exhibit O to Bitsko's Declaration stated the following:

> If you are **unable** to provide me with **requested documentation** you will **stop** contacting me and all negative information sent by you to any of the credit institutions must be redacted and corrected by you in a timely manor
>
> You will take no further action until I have time to review, and confer with the Department of Education to validate your claim.

Moreover, Silver's January 4, 2014 e-mail attached as Exhibit Q to Bitsko's Declaration reiterated Silver's revocation of prior express consent:[16]

---

[16] Said e-mail was also repeated in full in Silver's January 6, 2014 letter attached as Exhibit S to Bitsko's Declaration.

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

> First Name: Neil
> Last Name: Silver
> Date of Birth:        '1949
> Email Address: neilsilver1@gmail.com
> Phone Number: (415) 367-5583
> Message: Please look for certified letter; pay close attention to this
> letter as you have NOT done so in the past eight (8) months. You will
> immediately stop demand for monies I do not owe. Pay very, close attention
> to the content of letter. Any further demands for this money must come
> from the Department of Education, an organization you refuse to verify
> with and who will verify that I do not owe them any monies and you have
> NOT been requested to collect phantom funds. Do not call, do not email.
> You will respond to this letter as stated! A copy of this email will be
> enclosed with formal document that is being submitted. Warning any action
> taken by you on out dated, unverified data will be meet with any and all
> civil action and I will actively pursue any criminal investigation that I
> can. Be warned, I'm 64, unemployed, pissed off and I am looking for
> something to occupy my time!

As is evident, Silver's letters explicitly informed PHEAA that PHEAA was to refrain from contacting Silver telephonically through any means, manual or autodialed, and to communicate with Silver solely in writing. In making these repeated requests, Silver unequivocally revoked any prior express consent that PHEAA may have obtained.

Moreover, Silver reiterated that Silver revoked consent at least six times during Silver's deposition attached as Exhibit 6 to the Declaration of Matthew M. Loker. *See, e.g.* 32:24-25 ("I respectfully asked [PHEAA] not to call, at least on one occasion in writing via certified mail…"); 91:1-7 ("I spoke to a young lady. I was upset, and I said 'Why are you calling me after I told you not call me?'"); 100:11-17 (confirming that Silver sent PHEAA a written communication to not "contact him by an means other than mail."); 118:9-16 ("In my letter…that I sent with a certified letter and certified mail which stated on the very first line, 'Do not call.' It was clear. It was the very first line…do not call."); and, 169:11-23 ("I am

**PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

familiar with telling debt collectors that if I tell them not to call me and to respond by mail, I'm within my legal right to do so.  And I took note of that when I did that.").

While Silver asserts that each telephonic communication made by PHEAA to Silver's cellular telephone through Avaya constitutes a violation of the TCPA, PHEAA's January 13, 2014 telephonic communication detailed in PHEAA's Motion (6:4-6) undoubtedly violated the TCPA since Silver repeatedly revoked any prior express consent that PHEAA may have had prior to receipt of this telephonic communication.  *See also Gutierrez v. Barclays Group*, 2011 WL 579238 (S.D. Cal. 2011) ("oral revocation of consent is legally effective under the TCPA"); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014) (holding that prior express consent may be orally revoked); and, *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) ("Consequently, based on the common law, we hold that the TCPA allows consumers to revoke their prior express consent.").  Thus, PHEAAt's Motion should be denied in its entirety.

## IV.   **CONCLUSION**

Based on the foregoing, Silver respectfully requests this Court deny PHEAA's Motion for Summary Judgment since triable issues of material fact remain for the jury.  *Silver*, 706 Fed. App'x at 371.

As discussed above, PHEAA's Avaya dialer is a "predictive dialer" subject to the TCPA that also utilizes "prerecorded messages."

Moreover, the screenshot of the account notes associated with Silver's account wherein PHEAA allegedly "advised" Silver of the TCPA fall far short of satisfying PHEAA's affirmative defense of prior express consent.  However, even if the Court finds that Silver consented to receive such calls during the February 5, 2013 telephonic communication, Silver repeatedly revoked any alleged consent in

PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

multiple written communications prior to the January 13, 2014 telephonic communication.  Thus, PHEAA's Motion should be denied in its entirety.

Dated:  May 30, 2018                                                 Respectfully submitted,

                                                          KAZEROUNI LAW GROUP, APC

                                                          By:   /s/ Matthew M. Loker
                                                                MATTHEW M. LOKER, ESQ.
                                                                ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

        I, Matthew M. Loker, hereby certify that on May 30, 2018, I electronically filed PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send notification to all counsel of record.

Date: May 30, 2018                                  KAZEROUNI LAW GROUP, APC

                                                          By:   /s Matthew M. Loker
                                                                MATTHEW M. LOKER, ESQ.
                                                                ATTORNEY FOR PLAINTIFF

PLAINTIFF NEIL SILVER'S OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DBA FEDLOAN SERVICING'S SECOND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626