UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NEIL SILVER,

        Plaintiff,

    v.

PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY,

        Defendant.

Case No. 14-cv-00652-PJH

**ORDER DENYING PLAINTIFF'S
MOTION FOR CLASS
CERTIFICATION AND TERMINATING
DEFENDANT'S MOTION TO
DECERTIFY AS MOOT**

Re: Dkt. Nos. 84, 85

      Plaintiff Neil Silver's ("plaintiff") motion for class certification and defendant Pennsylvania Higher Education Assistance Agency's ("defendant") "motion to decertify" plaintiff's proposed class came on for hearing before this court on December 4, 2019. Plaintiff appeared through his counsel, Matt Leker. Defendant appeared through its counsel, Donald Bradley. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby **DENIES** plaintiff's motion for the following reasons. Accordingly, the court **TERMINATES** defendant's motion as moot.

## BACKGROUND

      On September 23, 2019, plaintiff and defendant respectively filed a motion for class certification (Dkt. 85) and motion to decertify (Dkt. 84) arising out of defendant's alleged violation of the Telephone Consumer Protection Act ("TCPA"), Title 47 U.S.C. § 227(b) (eff. Dec. 22, 2010 through Nov. 1, 2015). Analyzed below, plaintiff's motion seeks to certify a class that is materially identical to the putative class challenged by defendant and described in the first amended complaint ("FAC"), ***except*** plaintiff's

proposed class is now limited to persons who were subject to defendant's challenged conduct "after having requested [defendant] to refrain from further telephonic communications." Plaintiff seeks to certify his proposed class under both Rule 23(b)(3) and Rule 23(b)(2).

A side-by-side comparison of the proposed class definitions goes as follows:

| The Proposed Class in Plaintiff's Motion | The Putative Class Challenged in Defendant's Motion |
|---|---|
| "All persons within the United States who received a telephone call from PHEAA between February 2010 and February 2014 on their cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice ***after having requested PHEAA to refrain from further telephonic communications.***" Dkt. 85 at 2 (emphasis added). | "All persons within the United States who received any calls from Defendant, or its agent(s) and/or employee(s), to said person's cellular telephone, through the use of any automatic telephone dialing system and/or prerecorded or artificial voice, within the four years prior to the filling of the Complaint." Dkt. 84 at 2 citing Dkt. 40 (FAC) ¶ 18. |

Related to plaintiff's proposed class, plaintiff offers a two-step "class notice plan" to manage and identify class membership. First, plaintiff will use available contact information of potential class members that defendant already has in its possession and, to the extent necessary, hire a claims administrator to locate potential class members. Dkt. 85-1 at 16. Second, plaintiff will send such potential class members a form asking:

1. Did you inform defendant orally or in writing that you did not wish to receive telephonic communications on your cellular telephone? and

2. Did you receive a telephonic communication from defendant on your cellular telephone after asking defendant to stop calling you? Or, in the

alternative;

    3.  Whether the recipient received a call from defendant after he or she asked defendant to stop calling them.

Under this plan, potential class members may verify their answers by providing additional documents or submitting their responses under penalty of perjury. Dkt. 85-1 at 17. Because plaintiff seeks to certify a class that is different than the one that is the subject of defendant's motion, this order focuses its class certification analysis on plaintiff's proposed class only. However, because the parties mix their arguments concerning plaintiff's proposed class into the briefing on defendant's motion and also rely upon evidence submitted in support of both motions, this order will consider arguments and evidence from defendant's motion that are relevant to plaintiff's motion.

## A.    Relevant Allegations and Procedural Posture

On February 12, 2014, plaintiff filed his initial complaint against defendant in this court. Dkt. 1. On April 7, 2015, plaintiff filed his FAC. Dkt. 40. In it, plaintiff alleges that defendant violated Title 47 U.S.C. §227(b) when it used an automatic dialing or prerecorded system to call his cellphone without his consent in January 2014. FAC ¶¶ 10-16. Plaintiff alleges two claims arising out of such violation, the first sounding in negligence, FAC ¶¶ 32-35, and the second based upon defendant's knowing and intentional violation, FAC ¶¶ 36-39 (second cause of action). Plaintiff seeks $500 in statutory damages for each negligent violation, FAC at 9, Prayer 1, and "up to" $1,500 in treble statutory damages for each knowing/willful violation, FAC at 9, Prayer 2.

In his FAC, plaintiff sought to certify a class comprising the following members:

> "All persons within the United States who received any calls from Defendant, or its agent(s) and/or employee(s), to said person's cellular telephone, through the use of any automatic telephone dialing system and/or prerecorded or artificial voice, within the four years prior to the filling of the Complaint." FAC ¶ 18.

This proposed class is the target of defendant's preemptive motion to decertify. On March 31, 2016, prior to any class certification motion, this court granted defendant's

1   motion for summary judgment on grounds of a then-recent 2015 amendment to Title 47

2   U.S.C. § 227(b)(1)(a)(iii) that added an exception to § 227(b)(1)'s general prohibition for

3   calls made for the purpose of collecting on a debt backed by the federal government.

4   Dkt. 52.

5       On December 13, 2017, the Ninth Circuit reversed this court's order and

6   remanded the action.  The Ninth Circuit held that, because plaintiff's claims accrued prior

7   to the 2015 amendments, that amendment's exception did not retroactively apply to

8   plaintiff's claims.  Dkt. 60 at 3.  Following remand, the parties engaged in class discovery.

9   **B.    Summary of Facts Relevant to the Instant Motion**

10      Defendant is an organization approved by the United States Department of

11  Education (the "Department") to service federal student loans.  Dkt. 84-3 ¶ 3.  Defendant

12  uses the "Avaya Proactive Contact 4.2.1" dialing system to place automated or

13  prerecorded calls to borrowers.  Dkt. 84-2 ¶¶ 4-6.  During the class period, defendant

14  made 15,706,962 calls to 2,999,570 unique mobile phone numbers.  Dkt. 85-10 at 3; Dkt.

15  86 at 8.

16      Plaintiff maintains several student loans borrowed from the Department.  Dkt. 84-1

17  ¶ 7, Ex. A.  In 2011, while plaintiff awaited assignment to a loan servicer, the Department

18  informed plaintiff that such servicer would contact him by phone or mail.  Dkt. 84-3, Ex. 3

19  at 59:6-17.  Plaintiff agreed that such servicer could call him.  Id.[1]  On October 13, 2012,

20  the Department transferred plaintiff's loans to defendant for service.  Dkt. 84-1 ¶ 6; Dkt.

21  85-2 ¶ 4.

22      At oral argument, the court confirmed, and plaintiff did not dispute, that the sole

23  call made by defendant to plaintiff's cellphone (ending in 5583) using the automated

24  dialing system occurred on January 13, 2014.[2]  The key facts to resolve plaintiff's motion

25  _____

26  [1] In his deposition, when referencing who he expected the call from, plaintiff uses the
    ambiguous term "they," which, when read in context, could refer to either the Department
27  or the impending servicer.  Regardless, because plaintiff failed to challenge defendant's
    characterization of such testimony as referring to the servicer, Dkt. 84 at 9, the court
28  agrees that plaintiff's testimony referred to the servicer.
    [2] While plaintiff alleged a call from defendant "on or about January 29, 2014," FAC ¶ 11,

concern the parties' communications between October 2012 and defendant's undisputed January 13, 2014 call. The court details the relevant communications during this period immediately below. To the extent other facts outside of these communications are necessary to resolve plaintiff's motion, the court notes such facts in its analysis.

Plaintiff sent defendant a three-page letter on August 15, 2013, Dkt. 84-1 ¶ 22, Ex. N (cover page); Dkt. 85-3 (supplement), a one-page letter on October 31, 2013, Dkt. 84-1 ¶ 26, Ex. Q, and a two-page letter on January 6, 2014, Dkt. 85-6. Both the August 15, 2013 cover letter and the October 31, 2013 letter included plaintiff's cellphone number. Dkt. 84-1 ¶ 22, Ex. N; Id., Ex. Q. The August 15, 2013 cover letter requested that defendant verify both his loan information (as requested in the supplement) as well as its status as the assigned servicer. Id., Ex. N. In relevant part, the August 15, 2013 supplement states the following:

> "*If your offices attempt telephone communication with me, including but not limited to computer generated calls* and calls or correspondence sent to or with any third parties, *it will be considered harassment* and I will have no choice but to file suit. *All future communications with me MUST be done in writing* and sent to the address noted in this letter by USPS." Dkt. 85-3 (emphasis added).

The October 31, 2013 letter requests similar verification information. Dkt. 84-1, Ex. Q. In it, plaintiff requests that defendant "**notify** [him]" when it has "mailed" such documents to him. Id. (emphasis in the original). While this letter generally states that "[y]ou will take no further notice until I have time to review and confer with the Department of Education to validate your claim," id., it does not specify that defendant should not call plaintiff or explain how it should otherwise "notify" him.

The January 6, 2014 letter again requests the loan verification data and, copying the text of plaintiff's January 4, 2014 email (noted below), specifies "do not call, do not email." Dkt. 85-6. Significantly, this letter is marked as received by defendant on January 13, 2014 and does not include plaintiff's phone number. Id.

---

he failed to provide any evidence substantiating such subsequent communication. His declaration is also noticeably silent on that point.

Plaintiff also sent defendant numerous emails, including on July 16, 2013, Dkt. 84-1 ¶ 21, Ex. L, November 18, 2013, id. ¶ 27, Ex. R, January 4, 2014, id. ¶ 29, Ex. T; Dkt. 85-2 ¶ 9; Dkt. 85-5,[3] and January 9, 2014, Dkt. 84-1 ¶ 29, Ex. T.  The July 16, 2013 email summarily states that the Department does not list defendant as plaintiff's loan "holder." Dkt. 84-3 ¶ 21, Ex. L.  This email does not include plaintiff's phone number.  Id. ¶ 21, Ex. L.  The November 18, 2013 email again requests the verification information noted above.  Dkt. 84-1, Ex. R.  It includes plaintiff's phone number at two locations (header and footer) and does not specify that defendant should not call plaintiff.  Id.  The January 4, 2014 email states that "[y]ou will immediately stop [sic] demand for monies I do not owe . . . Do not call, do not email."  Dkt. 84-1, Ex. T; Dkt. 85-5.  This email also includes plaintiff's phone number in its header.  Id.  The January 9, 2014 email threatens legal action against defendant if it fails to follow the communication procedures outlined by plaintiff in his concurrent January 6, 2014 post-letter (noted above).  Dkt. 84-3 ¶ 29, Ex. T.  This email does not include plaintiff's phone number.

Separate from his written communications, plaintiff also called defendant on the following dates:

- November 7, 2012, Dkt. 84-1 ¶ 11, Ex. C;
- December 31, 2012, id. ¶ 12, Ex. D.;
- February 1, 2013, id. ¶ 13, Exs. E-G (three calls);
- February 4, 2013, id. ¶ 16, Ex. H;
- February 5, 2013, id. ¶ 17, Ex. I;
- July 6, 2013, id. ¶ 19, Ex. K;
- August 14, 2013, id. ¶ 21, Ex. M;
- August 26, 2013, id. ¶ 23, Ex. O;
- September 13, 2013, id. ¶ 24, Ex. P; and

---

[3] In his motion, plaintiff states that he sent this email on January 6, 2014.  Dkt. 85-2 ¶ 9; Dkt. 85-5.  While the exact date of this email is not necessary for resolving the instant motion, such statement is wrong.  Dkt. 85-7 (January 6, 2014 letter from plaintiff to defendant copying the text of this email and characterizing it as sent "January 4, 2014.").

1    • January 13, 2014, <u>id.</u> ¶ 30, Ex. U.

2    Plaintiff used his cellphone when making each call. <u>Id.</u> ¶¶ 11-13, 16-17, 19, 21,

3    23-24, 30.  According to defendant's unrefuted testimony, such calls concerned a

4    combination of plaintiff's account delinquency, the status of his loans and related

5    forbearances, and defendant's status as his servicer (as well as requests for written

6    verification of the same). <u>Id.</u> ¶¶ 11-30.  Significantly, during the February 5, 2013 call,

7    plaintiff provided defendant his consent to receive the subject automated/prerecorded

8    calls, <u>id.</u> ¶ 17, which defendant internally recorded, <u>id.</u> ¶ 18, Ex. J (a blurry system

9    printout appearing to show "CONSENT Y" in the middle left).  Defendant acknowledged

10   that its internal records concerning consent used a "Y for yes" and a "U" for "unknown."

11   Dkt. 85-10 at 13:15-24.

12   At some point, plaintiff retained counsel, who then sent defendant a letter on

13   February 11, 2014.  Dkt. 85-2 ¶ 13; Dkt. 85-7.  In relevant part, this letter demanded that

14   defendant not contact plaintiff and further states the following:

15   "[T]his letter revokes all prior business relationships as defined
     by [the TCPA] . . . Any prior consent that may have been given
16   that would allow for calling my client is expressly revoked."  Dkt.
     85-7.
17

18   On February 21, 2014, plaintiff (***not*** his counsel) then sent defendant a fax, which,

19   similar to counsel's February 11, 2014 letter, states the following:

20   "[T]his letter revokes all prior business relationships as defined
     by [the TCPA] . . . Any prior consent that may have been given
21   that would allow for calling my telephone numbers listed above
     is now expressly revoked."  Dkt. 85-8.
22

23   This fax also includes plaintiff's cellphone number.  <u>Id.</u>

24   **DISCUSSION**

25   **A.     Legal Standard**

26   To maintain a class action, a proposed class must satisfy Rule 23(a)'s numerosity,

27   commonality, typicality, and adequacy of representation requirements.  Fed. R. Civ. Pro.

28   23(a).  If all four prerequisites of Rule 23(a) are satisfied, the court then determines

1   whether to certify the class under one of the three subsections of Rule 23(b), which

2   requires plaintiffs to show either: (1) a risk of substantial prejudice from separate actions,

3   (2) that declaratory or injunctive relief benefitting the class as a whole would be

4   appropriate, or (3) that common questions of law or fact common to the class

5   predominate and that a class action is superior to other methods available for

6   adjudicating the controversy at issue.  Fed. R. Civ. Pro. 23(b)(1)-(3).

7          The party seeking class certification bears the burden of proof in demonstrating

8   that it has satisfied all four Rule 23(a) requirements and that their action falls within one

9   of the three types of actions permitted under Rule 23(b).  Zinzer v. Accufix Research

10  Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).  "Before certifying a class, the trial court

11  must conduct a rigorous analysis to determine whether the party seeking certification has

12  met the prerequisites of Rule 23."  Mazza v. American Honda Motor Co. Inc., 666 F.3d

13  581, 588 (9th Cir. 2012).  To the extent there are "any factual disputes necessary to

14  determine" a Rule 23 criterion, a district court is required to resolve them.  Ellis II v.

15  Costco Wholesale, 657 F.3d 970, 983 (9th Cir. 2011) ("However, the district court was

16  required to resolve any factual disputes necessary to determine whether there was a

17  common pattern and practice that could affect the class *as a whole*. If there is no

18  evidence that the entire class was subject to the same allegedly discriminatory practice,

19  there is no question common to the class.) (emphasis in the original).

20  **B.     Analysis**

21         **1.     Plaintiff's Proposed Class Definition Is Consistent with the Definition**

22                **Proposed in the FAC**

23         Absent leave to amend, a plaintiff generally may not seek to certify a class

24  different than that alleged in his or her operative pleading.  McCurley v. Royal Seas

25  Cruises, Inc., 331 F.R.D. 142, 161 (S.D. Cal. 2019).  Courts, however, recognize an

26  exception when such plaintiff "proposes a new class definition that is narrower than the

27  class definition originally proposed, and it does not involve a new claim for relief."  Id.

28         Here, the court finds that plaintiff's proposed class is no broader than that

challenged in defendant's motion to decertify.  As a practical matter, plaintiff

acknowledged the same at oral argument.  While defendant contends that "[p]laintiff's

class definition . . . is arguably broader than the prior definition" alleged in the FAC, Dkt.

86 at 8, defendant failed to explain such contention both in its briefing and at oral

argument.

As an analytical matter, both definitions are materially identical except for plaintiff's

inclusion of the "after having requested [defendant] to refrain from further telephone

communication" qualifier.  Compare FAC ¶ 18 with Dkt. 85 at 2.  Given that plaintiff's

motion's proposed class definition ***adds*** a condition not present in the FAC's comparable

definition, plaintiff's proposed class may be no broader than that alleged in the FAC and

defendant's unsupported challenge therefore fails.  As a result, the court will consider the

class proposed in plaintiff's motion.

**2.    The Proposed Class Does Not Fail for Want of an Administratively
Feasible Method of Identifying Its Membership**

Relying upon out of circuit authority, defendant suggests that plaintiff's proposed

class plan is improper on grounds of administrative infeasibility.  Dkt. 86 at 11.  Any such

challenge ignores Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017), cert.

denied sub nom. ConAgra Brands, Inc. v. Briseno, 138 S. Ct. 313, 199 L. Ed. 2d 206

(2017), which specifically ruled that a class proponent need not proffer an

administratively feasible way to identify class members.  844 F.3d at 1133 ("In summary,

the language of Rule 23 neither provides nor implies that demonstrating an

administratively feasible way to identify class members is a prerequisite to class

certification . . . We therefore join the Sixth, Seventh, and Eighth Circuits in declining to

adopt an administrative feasibility requirement.").  As a result, to the extent defendant

attempts to challenge plaintiff's proposed class on grounds of administrative infeasibility,

such attempt fails.

**3.    The Proposed Class Fails Rule 23(a)'s Threshold Requirements**

Here, plaintiff satisfied Rule 23(a)'s commonality, typicality, and adequacy of

1  representation requirements. However, because plaintiff failed to proffer sufficient

2  evidence showing that his proposed class satisfies the numerosity requirement, the court

3  finds that plaintiff's proposed class fails Rule 23(a). Despite that finding, because the

4  court alternatively concludes that certification is separately inappropriate under Rule

5  23(b)(3) and Rule 23(b)(2), the court addresses all four Rule 23(a) requirements.

6  **a.    The Proposed Class Satisfies the Commonality Requirement**

7  Rule 23(a)(2) requires questions of law or fact common to the class. Fed. R. Civ.

8  Pro. 23(a)(2). Under this requirement, plaintiff must "demonstrate that the class

9  members have suffered the same injury," not merely violations of "the same provision of

10 law." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-50 (2011). Given that, plaintiffs'

11 claims "must depend upon a common contention" such that "determination of [their] truth

12 or falsity will resolve an issue that is central to the validity of each one of the claims in

13 one stroke." Id. "What matters to class certification . . . is not the raising of common

14 questions—even in droves—but rather the capacity of a classwide proceeding to

15 generate common answers apt to drive the resolution of the litigation." Id.

16 To that end, the Ninth Circuit has explained that, under this requirement, "plaintiffs

17 need not show that every question in the case, or even a preponderance of questions, is

18 capable of classwide resolution. So long as there is even a single common question, a

19 would-be class can satisfy the commonality requirements of Rule 23(a)(2)." Wang v.

20 Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013). Given that, "where the

21 circumstances of each particular class member vary but retain a common core of factual

22 or legal issues with the rest of the class, commonality exists." Evon v. Law Offices of

23 Sidney Mickell, 688 F.3d 1015, 1029 (9th Cir. 2012).

24 Here, the proposed class shares at least one common question of fact—namely,

25 whether defendant used an auto-dialer or prerecorded messaging system when calling

26 class members' cellphones. Defendant itself acknowledges as much in its opposition.

27 Dkt. 86 at 12 ("Accordingly, only items 2 and 4 [listed by plaintiff in its opening as issues

28 satisfying the commonality requirement] are even arguably common issues."). As a

result, the court concludes that the proposed class satisfies the commonality

requirement.

### b.    Plaintiff's Claims Are Typical of Those of the Proposed Class

Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of those of

the proposed class.  Fed. R. Civ. Pro. 23(a)(3).  "The test for typicality is whether other

members have the same or similar injury, whether the action is based on conduct which

is not unique to the named plaintiffs, and whether other class members have been injured

by the same course of conduct."  Sandoval v. Cty. of Sonoma, 912 F.3d 509, 518 (9th

Cir. 2018), cert. denied sub nom. Cty. of Sonoma, California v. Sandoval, 140 S. Ct. 142,

205 L. Ed. 2d 35 (2019).

Here, plaintiff satisfies the typicality requirement.  In the FAC, plaintiff challenges

the following conduct by defendant:

> "In or around January 2014, Defendant began calling Plaintiff's
> cellular phone ending in #5583, utilizing a pre-recorded voice,
> in attempting to collect a debt that Plaintiff does not owe; prior
> to that point, Defendant had made efforts to contact Plaintiff via
> mail as well, about this particular debt, to which Plaintiff
> responded by requesting from Defendant, in writing, to not
> contact him by any means other than mail. Notwithstanding,
> Defendant continued placing calls to Plaintiff's cellular phone."
> FAC ¶ 10.

In comparison, plaintiff seeks to certify a class comprising the following individuals:

> "All persons within the United States who received a telephone
> call from PHEAA between February 2010 and February 2014
> on their cellular telephone made through the use of any
> automatic telephone dialing system or an artificial or
> prerecorded voice after having requested PHEAA to refrain
> from further telephonic communications."  Dkt. 85 at 2.

Under plaintiff's theory of liability, defendant violated his rights and those of other

potential class members under Title 47 U.S.C. § 227(b) to the extent defendant called

such persons on their cellphone after they requested that defendant refrain from doing

so.  In its opposition to plaintiff's certification motion, defendant argues that it "presented

evidence showing that plaintiff gave his express consent prior to the single autodialed call

[defendant] made to him" and that, subsequently, "defendant made no further calls to

1   plaintiff," Dkt. 86 at 12-13. While such contentions might, on the merits, be true, they do

2   not necessarily foreclose the court from determining that plaintiff revoked such consent

3   following its provision but before defendant's "single autodialed" call. Indeed, in his

4   January 4, 2014 email, plaintiff told defendant "do not call, do not email." Dkt. 84-1, Ex.

5   T; Dkt. 85-5. Given that, defendant's argument that plaintiff "is not a member of the class

6   he seeks to represent," Dkt. 86 at 13, does not necessarily hold.

7       In its motion to decertify, defendant adds that plaintiff fails the typicality

8   requirement because (1) it has certain affirmative defenses that arise uniquely from the

9   history of plaintiff's loans and (2) "significant time" would be required to determine

10  whether plaintiff "unequivocally revoked consent to be contacted on his cell phone" and

11  whether defendant complied with such request. Dkt. 84 at 24-26. As an initial matter,

12  defendant failed to raise these arguments in its opposition to plaintiff's motion. Dkt. 86 at

13  12-13. In any event, the court finds that any unique history of plaintiff's loans or the

14  amount of contacts between plaintiff and defendant does not make him atypical under

15  Rule 23(a)(3). While such criticisms are well-placed for purpose of finding against

16  predominance under Rule 23(b)(3), the circumstances purportedly unique to plaintiff do

17  not change the conclusion that the potential claims of the other proposed class members

18  arose from the same course of action (an unsolicited cellphone call) and resulted in the

19  same injury (violation of one's rights under the TCPA). As a result, the court finds that

20  plaintiff's claims are typical of those of the proposed class.

21              c.     **Plaintiff and His Counsel Are Adequate**

22      Rule 23(a)(4) requires that the party representatives fairly and adequately protect

23  the interests of the class. Fed. R. Civ. Pro. 23(a)(4). The Ninth Circuit has set forth a

24  two-part test for this requirement: "(1) do the named plaintiffs and their counsel have any

25  conflicts of interest with other class members and (2) will the named plaintiffs and their

26  counsel prosecute the action vigorously on behalf of the class?" Staton v. Boeing Co.,

27  327 F.3d 938, 957 (9th Cir. 2003).

28

### 1. Plaintiff Is an Adequate Representative of the Proposed Class

Here, plaintiff is an adequate class representative. Significantly, the parties identified no known conflict between him and the class and he has demonstrated a continued commitment to litigate this action (which is now over five years pending) as lead plaintiff. Such commitment is further shown by his willingness to participate in discovery, including sitting for two depositions. Dkt. 85-2 ¶¶ 24-25. While defendant does identify apparent questions concerning plaintiff's integrity (namely that he previously lied under oath), defendant failed to explain how such an issue of integrity implicates a cognizable conflict or inability to vigorously litigate this case. As a result, plaintiff satisfies the adequate class representative requirement.

### 2. Counsel Are Adequate to Represent the Proposed Class

Rule 23(g) requires that a district court appoint class counsel for any class that is certified and further lists the following four factors relevant to such appointment: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions or other complex litigation and the type of claims in the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. Pro. 23(g). Additionally, a court may consider the proposed counsel's professional qualifications, skill, and experience, as well as such counsel's performance in the action itself. In re Emulex Corp. 210 F.R.D. 717, 720 (C.D. Cal. 2002).

Here, counsel is adequate for purpose of Rule 23. As an initial matter, defendant does not contest counsel's adequacy. Dkt. 86 at 13. Additionally, counsel has experience litigating various consumer related class actions, including ones based on alleged TCPA violations. Dkt. 85-9 ¶ 12(a)-(u), ¶ 13 (Kazerouni Law Group); Dkt. 85-14 ¶ 16(a)-(e), ¶ 17(a)-(aaa) (Kazerouni Law Group); Dkt. 85-15 ¶ 10(a)-(ddd), ¶ 11(a)-(j). Counsel has also performed well in this action, including succeeding in plaintiff's appeal of this court's prior order granting defendant's motion for summary judgment. Dkt. 60.

1  Given the above, the court finds that counsel is sufficiently qualified.  As a result, the

2  court concludes that the proposed class satisfies the adequacy requirement.

3        **d.**      **Plaintiff Has Failed to Proffer Sufficient Evidence Establishing**

4                **Numerosity**

5       Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all

6  members is impracticable.  Fed. R. Civ. Pro. 23(a)(1).  While there is no fixed number

7  that satisfies the numerosity requirements, courts often find that a group greater than 40

8  members meets such requirement.  Californians for Disability Rights, Inc. v. California

9  Dep't of Transportation, 249 F.R.D. 334, 346 (N.D. Cal. 2008).

10       Here, plaintiff failed to show that his proposed class would satisfy the numerosity

11  requirement.  As an initial matter, plaintiff concedes this failure.  Dkt. 89 at 4-5 ("Here,

12  Silver argues that the weight of authority favors permitting the self-identification process

13  outlined by Silver. . . . Moreover, this process **will determine** whether Silver's class

14  satisfies numerosity as well.") (emphasis added).  Rather than satisfy his evidentiary

15  burden, plaintiff hinges his numerosity showing upon "common sense assumptions," Dkt.

16  87 at 7, that the court may draw from "the unlikely event that less than 40 consumers out

17  of 3,000,000 who received telephonic communications from [defendant] submit a claim"

18  in response to plaintiff's proposed class notice plan, Dkt. 89 at 5.  Such purported

19  improbability is not evidence, and the court refuses to adopt it as a basis for finding

20  numerosity here.

21       While the court acknowledges that it may make "common-sense assumptions and

22  reasonable inferences" when analyzing numerosity, West v. California Servs. Bureau,

23  Inc., 323 F.R.D. 295, 303 (N.D. Cal. 2017), leave to appeal denied sub nom. Membreno

24  v. California Serv. Bureau, Inc., 2018 WL 1604629 (9th Cir. Mar. 27, 2018), defendant

25  proffered evidence that it maintained a practice during the relevant period to obtain and

26  then record a borrower's consent to call him using an automated or prerecorded system.

27  Dkt. 84-3, Ex. 1 at 35:16-21.  Such practice (which is supported by evidence) instead

28  leads to the reasonable inference that defendant would not call cellphones using the

challenged system absent consent, which thereby undermines the validity of plaintiff's common-sense assumption.

In any event, the fact that plaintiff enjoyed a multi-month period for class discovery—yet, in verified responses to defendant's interrogatory requests dated December 4, 2018, altogether failed to identify even one other similarly situated individual, Dkt. 85-3, Ex. 8 Response No. 44 (Q: "Identify all putative class members known to you or your counsel." A: "None at this time. Investigation continues")—further undermines plaintiff's proffered assumption that, because of the sheer number of calls made, at least 39 others must have been contacted by defendant without consent.

Plaintiff's remaining response on this issue—namely, that he need not "actually identify class members at the certification stage," Dkt. 87 at 10—misses the point. As discussed above, plaintiff is correct that the Ninth Circuit recognizes that an ascertainability showing is not required under Rule 23(a). However, such recognition does not relieve plaintiff from satisfying Rule 23(a)(1)'s numerosity requirement. Because plaintiff failed to do so, the court denies his motion on this ground alone.

In any event, even if plaintiff did satisfy Rule 23(a)(1)'s numerosity requirement, plaintiff failed to show that certification of his proposed class is proper under either Rule 23(b)(3) or Rule 23(b)(2). As a result, the court denies plaintiff's motion for class certification on those independent grounds as well.

### 4. The Proposed Class Fails Rule 23(b)(3)

If a plaintiff satisfies Rule 23(a), he or she may maintain a class action under Rule 23(b)(3) if the court finds the following:

- "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and
- "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3).

"The predominance inquiry under Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." In re Hyundai and Kia

Fuel Economy Litig., 926 F.3d 539, 557 (9th Cir. 2019). "It presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2), and focuses on whether the common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." Id. "[I]f so, there is clear justification for handling the dispute on a representative rather than on an individual basis." Id.

The predominance analysis is not "a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." Id. Given that, "even if just one common question predominates, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." Id.

### a. This Court's Predominance Analysis Turns on Only the Elements of Title 47 U.S.C. § 227(b)

To determine "whether questions of law or fact common to class members predominate," courts "begin[] . . . with the elements of the underlying causes of action." Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc., 2012 WL 5199458, at *7 (N.D. Cal. Oct. 22, 2012). Here, plaintiff alleges only two causes of action: (1) a negligent violation of Title 47 U.S.C. § 227(b) and (2) a willful violation of that same section. As a result, this court's predominance analysis is limited to the pre-2015 elements of Title 47 U.S.C. § 227(b).

Prior to its 2015 amendment, Title 47 U.S.C. § 227(b)(1)(A)(iii) provided the following:

> "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

16

**(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii) (eff. Dec. 22, 2010 to Nov. 1, 2015).

To establish a claim under that version of Title 47 U.S.C. § 227(b), then, a plaintiff must prove the following: (1) defendant called a cellular telephone number; (2) using an automatic telephone dialing system; and (3) did so without the recipient's prior express consent. Blair v. CBE Grp., Inc. 309 F.R.D. 621, 628 (S.D. Cal. 2015).

The TCPA does not define "prior express consent." However, the Federal Communications Commission ("FCC") has found that, for purpose of the TCPA:

"[p]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate [TCPA rules] by calling a number which was provided as one to which the called party wishes to be reached."

Reardon v. Uber Techs., Inc., 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) citing In Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C. Rcd. 8752, 8769, ¶ 31 (1992).

Courts construe this order to allow a finding of consent when the recipient of a challenged communication provides his number to the contacting party. Reardon, 115 F. Supp. 3d at 1097 ("In accordance with the 1992 FCC Order, the vast majority of cases to address the issue have held that a telephone customer who provides her number to another party consents to receive calls or texts from that party.").

### b. Defendant Provided Evidence In Support of Its Consent Affirmative Defense

Under the TCPA, a plaintiff's "express consent" is an affirmative defense that a defendant bears the burden of proving. True Health Chiropractic, Inc. v. McKesson Corp., 896 F.3d 923, 931 (9th Cir. 2018), cert. denied, 139 S. Ct. 2743 (2019) ("While the appeal in this case was pending, we decided Van Patten v. Vertical Fitness Group, LLC,

United States District Court
Northern District of California

847 F.3d 1037 (9th Cir. 2017). There, we held that "express consent" is an affirmative defense to a claim brought under a provision of the TCPA dealing with unsolicited telephone calls, and that the defendant bears the burden of proving such consent."). While acknowledging that "[p]utative class members . . . retain the burden of showing that the proposed class satisfies the requirements of Rule 23," the Ninth Circuit in True Health emphasized that a defendant's burden of proving its consent defense "strongly affects" the Rule 23(b)(3) predominance analysis. Id. at 931.

To contest predominance on the issue of consent, a defendant must first offer his consent defenses and their supporting evidence. Id. ("Since [defendant] bears the burden, we assess predominance by analyzing the consent defenses [defendant] has actually advanced and for which it has presented evidence."). Courts may not consider consent defenses not actually advanced by defendant or unsupported by evidence. Id. 932 ("But we do not consider the consent defenses that [defendant] might advance or for which it has presented no evidence."). In the event a defendant fails to proffer evidence in support of its consent defense, courts consider such defense a common issue for purpose of Rule 23(b)(3). Caldera v. Am. Med. Collection Agency, 320 F.R.D. 513, 519 (C.D. Cal. 2017) ("However, Defendant submits no evidence that any class member in this case consented. Where a party has not submitted any evidence of . . . express consent, courts will not presume that resolving such issues requires individualized inquiries. . . . Accordingly, there is no indication that individualized issues of consent would be an obstacle to managing this case as a class action.").

When analyzing potential class claims under the TCPA for the distribution of unsolicited faxes, the court in True Health considered the following methods proffered by the defendants for showing such a defense:

1. Providing contact information when registering a product;
2. Entering into a licensing agreement permitting defendant to contact potential class members;
3. Having individual communications with potential class members;

18

4. Developing personal relationship with such potential members;

5. Checking a box when registering software authorizing defendant to contact such potential member;

6. Completing a written consent form authorizing such contact; and

7. Confirming by telephone that the potential class member would like "to continue to receive" certain communications or change their communication preferences during a purported "outreach program to update contact information" of preexisting customers. 896 F.3d at 932-33.

Significantly, the court in <u>True Health</u> did not rule that any of the above-considered methods were the exclusive or necessary means to show consent. Instead, the court found such methods illustrative, specifically observing that "[a] defendant can produce evidence of a predominance-defeating consent defense in a variety of ways." 896 F.3d at 931-32.

Here, in its motion to decertify, defendant advanced five methods of obtaining consent, four of which are supported by evidence of obtaining consent from plaintiff specifically and one of which is supported by evidence of obtaining consent from borrowers more generally. Dkt. 84 at 18-19. Such methods include the following:

1. Letters from plaintiff providing his cell phone number. To support this method, defendant proffered evidence of two such letters. Dkt. 84-1, Ex. N (August 15, 2013 cover); <u>id.</u> ¶ 26, Ex. Q (October 31, 2013).

2. Emails from plaintiff providing his phone number. To support this method, defendant proffered evidence of two such emails. Dkt. 84-1 ¶ 27, Ex. R (November 18, 2013); <u>id.</u> ¶ 29, Ex. T (January 4, 2014).

3. The fact that plaintiff called defendant from his cellphone 12 times between November 7, 2012 and January 13, 2014, as well as the parties' February 5, 2013 conversation in which plaintiff consented to automated/prerecorded calls. To support this method, defendant provided undisputed evidence of all such calls, which occurred on the following dates:

United States District Court
Northern District of California

1       ○ November 7, 2012, Dkt. 84-1 ¶ 11, Ex. C;

2       ○ December 31, 2012, <u>id.</u> ¶ 12, Ex. D.;

3       ○ February 1, 2013 (three calls), <u>id.</u> ¶ 13, Exs. E-G;

4       ○ February 4, 2013, <u>id.</u> ¶ 16, Ex. H;

5       ○ February 5, 2013, <u>id.</u> ¶ 17, Ex. I;

6       ○ July 6, 2013, <u>id.</u> ¶ 19, Ex. K;

7       ○ August 14, 2013, <u>id.</u> ¶ 21, Ex. M;

8       ○ August 26, 2013, <u>id.</u> ¶ 23, Ex. O;

9       ○ September 13, 2013, <u>id.</u> ¶ 24, Ex. P; and

10       ○ January 13, 2014, <u>id.</u> ¶ 30, Ex. U.

11    4. Communications with third parties having some responsibility for a loan.  To

12      support this method, defendant cites plaintiff's deposition testimony

13      acknowledging that he agreed with the Department that a loan servicer,

14      once assigned, could call him.  Dkt. 84-3, Ex. 3 at 59:6-17.

15    5. Loan documents that contain consent language regarding telephone

16      contact.  To support this method, defendant provided evidence that, as a

17      general matter, borrowers may include their contact information in master

18      promissory loan documents.  Dkt. 84-3, Ex. 1 at 14:2-20, 15:10-22.  (While

19      defendant failed to proffer plaintiff's loan documents, plaintiff does not

20      contest that he provided his contact information in such documents when

21      accepting his loans.).

22   Despite these consent methods and their supporting evidence, plaintiff

23 characterizes defendant's predominance argument as "unsubstantiated," cryptically

24 asserting that defendant's argument "fails since [defendant] has neglected to provide any

25 evidence to support this argument despite ample opportunity to do so." Dkt. 89 at 6-7.  To

26 the extent plaintiff argues that defendant's threshold showing requires evidence of

27 consent pertaining to members of the proposed class more generally (as opposed to

28 plaintiff specifically), any such showing would require more than the Ninth Circuit has

already found sufficient to put consent at issue under Rule 23(b)(3).  True Health, 896

F.3d at 927, 932 (denying certification of subclass on grounds of predominance even

though the evidence of consent proffered by defendant with respect to such subclass

"**may not list every** putative class member that consented in the specified ways.")

(emphasis added); Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1042 (9th

Cir. 2012) ("[Defendant] did not show **a single instance** where express consent was

given before the call was placed. . . . But [defendant] does not point to **a single instance**

where a cellular telephone number that had been given by the debtor to the original

creditor was also found by [defendant] via skip-tracing . . .") (emphasis added).

Further, the court finds that it is unreasonable to impose such a heightened

showing where, like here, plaintiff's proffered method for establishing numerosity

depends upon a non-evidentiary "common sense" probability that there is a sufficient

number of proposed class members.  To do so would effectively require a defendant to

proffer evidence of consent for a class that—by plaintiff's own standard—may not actually

exist.  Because defendant has set forth multiple methods for demonstrating plaintiff's

consent that are supported by evidence, defendant satisfied its threshold burden of proof

to put consent at issue for purpose of Rule 23(b)(3) predominance.[4]

      **c.**    **Plaintiff Failed to Show that Common Questions Predominate**

                **the Individualized Questions Inherent in Defendant's Consent**

                **Defense**

In the event a defendant offers evidence in support of his consent defenses, then,

to satisfy Rule 23(b)(3), plaintiff must show that such consent defenses (or the lack

thereof) are susceptible to common proof.  True Health Chiropractic, Inc., 896 F.3d at

931 ("Defenses that must be litigated on an individual basis can defeat class

---

[4] In its reply, defendant cites certain regulations promulgated under the Higher Education Act that may independently "invalidate" any demand by a borrower not to be contacted by phone.  Dkt. 88 at 10 n. 3.  While defendant summarily asserts that "this regulation is applicable to Silver's loan by operation of 20 U.S.C. § 1087e(a)(1)," id., defendant failed to develop this argument in its briefing.  As a result, the court will not rely upon any individualized questions of law such regulations may pose to the class proposed here.

certification."); Kristensen v. Credit Payment Servs., 12 F. Supp. 3d 1292, 1306-07 (D.

Nev. 2014) ("If consent is an element of the prima facie case . . . [plaintiff] must prove that

lack-of-consent can be addressed with class-wide proof. If [plaintiff] is correct that

consent is an affirmative defense, then he must prove that he can defeat Defendants'

consent argument with class-wide proof. The practical effect is the same: for purposes of

class certification, [plaintiff] must prove that consent, or the lack thereof, can be resolved

'on evidence and theories applicable to the entire class.'").

Going back to the seven methods of demonstrating consent that were examined in

True Health, the court found that method one (i.e., contact information provided when

registering a product) and method two (i.e., entering an agreement permitting defendant

to contact potential class members) were susceptible to common proof. 896 F.3d at 932

("First, [defendant] asserts that some of the remaining putative class members gave

consent **by providing their fax numbers when registering a product** purchased from

a subdivision of [defendant]. Second, [defendant] asserts that some of them gave

consent **by entering into software-licensing agreements**, or EULAs. We have

examples of product registrations and EULAs in the record. [Defendant] has provided no

further evidence relevant to these two defenses. . . . So far as the record shows, there is

little or no variation in the product registrations and the EULAs. For both of these

asserted defenses, the predominance requirement of Rule 23(b)(3) is therefore

satisfied.") (emphasis added).

With respect to method three (i.e., individual communications with potential class

members) and method four (i.e., personal relationships with potential class members),

the court found that such methods were subject to individualized inquiries not capable of

classwide proof. Id. at 932 ("Exhibit C lists putative class members whose claims are

based on faxes sent to fifty-five unique fax numbers. McKesson provided evidence in the

district court that its consent defenses to these claims **would be based on individual

communications** and **personal relationships between McKesson representatives

and their customers**. The variation in such communications and relationships . . . is

United States District Court
Northern District of California

enough to support denial of class certification under Rule 23(b)(3) for the putative class members listed in Exhibit C.") (emphasis added).

With respect to method five (i.e., checking a box authorizing contact when registering software), method six (i.e., completing a written form authorizing contact), and method seven (i.e., oral confirmation concerning a potential class member's preference for future contact), the court noted that consent provided by such methods may, but are not necessarily, susceptible to common proof. Id. at 932-33 (describing each method and then stating "[i]t is possible that some or all of the putative class members in Exhibit B satisfy the predominance requirement. . . . we view these and other issues related to Exhibit B as best addressed in the first instance by the district court on remand.") (emphasis added).[5]

Here, plaintiff fails to show that any of defendant's methods of consent may be shown by classwide proof. With respect to its first and second methods, defendant provided letters and emails reflecting individual communications between it and plaintiff. Similar to those described above as method three in True Health, such individualized writings are necessarily not susceptible to classwide proof. As an initial matter, the fact that four of plaintiff's writings include his phone number—Dkt. 84-1 ¶ 22, Ex. N (August 15, 2013 cover letter); Id., Ex. Q (October 31, 2013 letter); Id. ¶ 27, Ex. R (November 18, 2013 email); Id. ¶ 29, Ex. T, Dkt. 85-2 ¶ 9, Dkt. 85-5 (January 4, 2014 email)—while two others omit such number—Dkt. 84-1 ¶ 21, Ex. L (July 16, 2013 email); id. ¶ 29, Ex. T (January 9, 2014 email)—itself demonstrates the variations inherent in written

---

[5] Plaintiffs ultimately abandoned their request to certify the subclasses subject to consent methods five through seven. True Health Chiropractic Inc. v. McKesson Corp., 2019 WL 3804713, at *2 (N.D. Cal. Aug. 13, 2019) ("Following remand, the Court reopened fact discovery for the limited purpose of supplementing the record in light of Van Patten, and only as to putative class members identified in Exhibit B. . . . After supplemental discovery, Plaintiffs submitted a renewed motion for class certification. . . . *Plaintiffs no longer seek certification of putative class members in Exhibit B*; rather, Plaintiffs seek certification limited to the Exhibit A-only Class") (emphasis added).

communications between any potential class member and defendant.

Such variations are further shown by qualitative differences in the language used in such individualized writings. For example, while plaintiff's August 15, 2013 supplement threatens a lawsuit if defendant attempts communicating with him by phone, Dkt. 85-3, his January 4, 2014 emails states "do not call, do not email," Dkt. 84-1, Ex. T; Dkt. 85-5. While these statements instruct defendant not call him, they use different language to make that point. Such finely grained differences would require a communication-specific analysis to determine consent. Such a determination is further complicated in circumstances where, like here, a potential class member says one thing (don't call me) but takes an action suggesting another (listing his cell phone number).

Separately, communications like plaintiff's October 31, 2013 letter—which requests that defendant "notify" him when it mailed his requested information, Dkt. 84-1, Ex. Q, but fails to specify how defendant should provide such notification—further preclude proving consent on a classwide basis. To determine whether such vague instructions allowed defendant to contact a proposed class member by phone, the court would need to understand the preexisting status of such member's consent. In short, individualized communications between a potential class member and defendant allow for multiple combinations of statements and conduct concerning consent. Given the breadth of such combinations, a court's determination on that issue would require an individualized analysis. As a result, plaintiff failed to satisfy his burden of demonstrating that common issues of proof for these methods of consent predominate.

With respect to its third method, defendant provided evidence of various phone conversations during the class period between plaintiff and defendant, during at least one of which plaintiff purportedly consented to the subject calls. Dkt. 84-1 ¶¶ 17-18; Id, Ex. J. Similar to the individualized writings analyzed immediately above, consent-related statements made over a phone call implicate the same sort of variations that would require a conversation-specific analysis to determine consent. As a result, plaintiff failed to satisfy his burden of demonstrating that common issues of proof for this method of

1    consent predominate.

2        With respect to its fourth method, defendant provided plaintiff's deposition

3    testimony acknowledging that he had agreed with the Department that a loan servicer

4    could call him once assigned. Dkt. 84-3, Ex. 3 at 59:6-17. While sworn party testimony

5    reflecting such acknowledgement allows a straightforward consent determination, not all

6    pieces of evidence that reflect a borrower's communications with third parties will allow

7    such a clear determination. Instead, most evidence of a borrower's communications with

8    some loan-related third-party will implicate the same conversation-specific analysis to

9    determine consent that is required under the first through third methods noted above. As

10   a result, plaintiff failed to satisfy his burden of demonstrating that common issues of proof

11   for this method of consent predominate.

12       With respect to its fifth method, defendant provided testimony that borrowers might

13   include their phone information in the master promissory note loan documents, and that it

14   may receive such documents from different and various originating entities, as well as the

15   borrower directly. Dkt. 84-3, Ex. 1 at 14:2-20, 15:10-22; Id. 84-2 ¶ 3. Plaintiff failed to

16   proffer any evidence showing that such loan documents were uniform in their inclusion

17   (or exclusion) of a provision requesting borrowers to include their respective contact

18   information. Absent such a showing, the court may reasonably infer that the above-

19   referenced loan documents varied in their request for such information. As a result,

20   plaintiff failed to satisfy his burden of demonstrating that common issues of proof for this

21   method of consent predominate.

22       Given the above, plaintiff's assertion that defendant "simply argues against

23   commonality and predominance based upon unsubstantiated statements that consent

24   and revocation of consent 'are rife with individualized inquires [sic]'" but "neglected to

25   provide any evidence to support this argument," Dkt. 89 at 6-7, is without merit.

26   Defendant proffered evidence substantiating its various methods of receiving consent

27   from plaintiff specifically, as well as borrowers more generally (through originating loan

28   documents). Given that, plaintiff was then required to show how each such theory is

1  subject to common proof.  Plaintiff failed to do so.

2       Instead, to satisfy such showing, plaintiff relies solely upon his proposed class

3  notice plan, which, plaintiff summarily concludes, "will ensure that only those consumers

4  who fit within Silver's class are included." Dkt. 85-1 at 25.  Such reliance is misplaced.

5  As an initial matter, plaintiff's plan is speculative and theoretical.  Absent any supporting

6  documentation showing an executed version of it, plaintiff's "plan" remains just that—an

7  unverified idea.  Further, even if the court were to accept plaintiff's plan, any information

8  provided in response to it would not prove that consent could be shown on a classwide

9  basis.  While step three of the plan would allow proposed class members to submit

10 documentation or declarations to verify their consent responses, defendant could still

11 proffer its own evidence contesting or impeaching such responses.  Such sequence of

12 events would then require the court to determine consent on a class member-by-class

13 member basis.

14      Lastly, plaintiff's amended class definition—which is limited to persons who

15 defendant called "after having requested [defendant] to refrain from further telephonic

16 communications," Dkt. 85-1 at 16—does not obviate the need for plaintiff to show that

17 consent (or lack thereof) may be shown on a classwide basis.  Significantly, just as

18 potential class members could revoke their prior consent to the subject calls, they could

19 also **reestablish** such consent.  Given that possibility, defendant would then be entitled

20 to show—again, on a class member-by-class member basis—that it subsequently

21 received such reestablished consent prior to the subject call.  In this subset of cases,

22 individual-specific questions concerning consent would predominate because

23 reestablishing subsequent consent could take just as many forms (i.e., words or conduct)

24 and could occur through just as many methods (i.e., loan documentation, letter, email,

25 oral conversation) as establishing initial consent.  In short, the court concludes that the

26 proposed class is improper because individual issues of proof of consent would

27 separately predominate their common counterpart.

28

26

### d. Plaintiff Has Failed to Show that Common Questions Predominate the Individualized Questions Inherent in Demonstrating Revocation

The Ninth Circuit has recognized that the TCPA includes the implied right of a consumer to revoke his or her prior express consent. Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1048 (9th Cir. 2017) ("Concluding that the reasoning of our sister circuits is persuasive and the FCC's interpretation of the TCPA is reasonable, we agree that the TCPA permits consumers to revoke their prior express consent to be contacted by telephone autodialing systems.").

Similar to "prior express consent," the TCPA does not define what qualifies as a revocation of such consent. The FCC, however, interpreted the TCPA to allow a consumer to revoke his or her consent "in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, 7999 ¶ 70 (2015) aff'd in relevant part by ACA Int'l v. Fed. Commc'ns Comm'n, 885 F.3d 687, 692 (D.C. Cir. 2018) ("***We uphold the Commission's approach to revocation of consent, under which a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller***. We also sustain the scope of the agency's exemption for time-sensitive healthcare calls. . . . We set aside, however, the Commission's effort to clarify the types of calling equipment that fall within the TCPA's restrictions. . . . We therefore grant the petitions for review in part and deny them in part.") (emphasis added).

Citing this same 2015 FCC ruling, the Ninth Circuit has acknowledged that consumers may revoke consent "using any reasonable method" and that the TCPA "does not permit the calling party to designate the exclusive means of revocation." Van Patten, 847 F.3d at 1047-48 ("The 2015 Order stressed that consumers 'have a right to revoke consent, using any reasonable method including orally or in writing.' . . . The FCC also

1  specified ways that a consumer may revoke a call: 'by way of a consumer-initiated call,

2  directly in response to a call initiated or made by a caller, or at an in-store bill payment

3  location, among other possibilities.' . . . The FCC emphasized that the TCPA does not

4  permit the calling party to designate the exclusive means of revocation, and instead, the

5  called party must 'clearly express his or her desire not to receive further calls.' . . .  It is

6  reasonable for the FCC to interpret the TCPA to permit revocation of consent.").

7      In its order, the FCC also clarified that, when determining whether a party has

8  revoked his or her consent for purpose of the TCPA, it would look to the "totality of the

9  facts and circumstances" surrounding the purported revocation.  In particular, the FCC

10  provided the following:

11      "When assessing whether any particular means of revocation
        used by a consumer was reasonable, *we will look to the*
12      *totality of the facts and circumstances surrounding that*
        *specific situation*, including, for example, whether the
13      consumer had a reasonable expectation that he or she could
        effectively communicate his or her request for revocation to the
14      caller in that circumstance, and whether the caller could have
        implemented mechanisms to effectuate a requested revocation
15      without incurring undue burdens. We caution that callers may
        not deliberately design systems or operations in ways that
16      make it difficult or impossible to effectuate revocations."

17      In the Matter of Rules & Regulations Implementing the Tel.
        Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, 7996 ¶ 64
18      n.233 (2015) (emphasis added); ACA Int'l v. Fed. Commc'ns
        Comm'n, 885 F.3d 687, 709 (D.C. Cir. 2018) ("In assessing
19      whether a revocation request meets the 'reasonable means'
        standard, the Commission said it would consider 'the totality of
20      the facts and circumstances.'").

21      Courts have described this inquiry as a question of fact reserved for the jury.

22  Herrera v. First Nat'l Bank of Omaha, N.A., 2017 WL 6001718, at *4 (C.D. Cal. Dec. 4,

23  2017) ("Whether Plaintiff's request to 'stop calling' was a clear and express revocation of

24  her consent to be called is a question of fact reserved for the jury.").

25      Here, plaintiff fails to explain how he could prove revocation of consent by

26  potential class members on a classwide basis.  Again, rather than provide such

27  explanation, plaintiff relies upon the same summary assertions cited in support of his

28  predominance argument on the issue of consent—i.e, (1) the proposed class notice plan

28

United States District Court
Northern District of California

will ensure that only persons who fit within the class definition will be included and (2) defendant failed to provide any evidence to support its position that revocation of consent is "rife with individualized inquiries."[6]  For the same reasons provided above, plaintiff's first assertion is misplaced.

With respect to his second assertion, plaintiff failed to identify any authority that the threshold evidentiary showing of consent borne by defendant required to put such affirmative defense at issue under Rule 23(b)(3)'s predominance analysis extends to *revocation* of consent.  The rationale behind placing that threshold obligation upon defendant is premised upon the Ninth Circuit's determination that "prior express consent," for purpose of the TCPA, is an affirmative defense, which is an element of a claim that a defendant bears the burden of showing in response to a plaintiff's prima facie case.  Here, a revocation of such consent—which would *reestablish liability* under Title 47 U.S.C. § 227(b)—is a factual issue that, under any ordinary showing of liability, plaintiff would bear the burden of proving as part of his prima facie case.  Indeed, plaintiff himself put that factual finding at issue when amending his class definition.

Regardless, even if plaintiff had attempted to show how revocation may be proven on a classwide basis, such attempt would likely fail.  To determine revocation, a court "look[s] to the totality of the facts and circumstances surrounding [the] specific situation." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. at 7996 ¶ 64 n.233.  Such analysis may require a detailed inquiry into various representations and conduct made by a potential class member and defendant.  Here, for example, defendant's January 13, 2014 call is preceded by plaintiff's January 4,

---

[6] Dkt. 85-1 at 25 ("Consumers that were sent autodialed and/or prerecorded voice calls *after revoking* prior express consent are members of the proposed class. The claim form process outlined above will ensure that only those consumers who fit within Silver's class are included. Therefore, the common issues predominate in this TCPA action, regardless of the ultimate merits of the action.") (emphasis added); Dkt. 89 at 6-7 ("Like many TCPA defendants, PHEAA simply argues against commonality and predominance based upon unsubstantiated statements that consent *and revocation of consent* 'are rife with individualized inquires [sic]' . . . However, this argument of counsel fails since PHEAA has neglected to provide any evidence to support this argument despite ample opportunity to do so.") (emphasis added).

2014 email, which demands that defendant not call plaintiff but, nevertheless, includes plaintiff's phone number.  Dkt. 84-1 ¶ 29, Ex. T; Dkt. 85-2 ¶ 9; Dkt. 85-5.  While plaintiff followed-up with a January 6, 2014 letter that reiterated "do not call, do not email" (and did not include his phone number), that letter is not marked as received by defendant until the date of the sole actionable phone call here—January 13, 2014.  Dkt. 85-6.  Regardless of whether the circumstances here support a finding of revocation, the need to inquire into the parties' specific statements and actions to make such determination effectively eliminates classwide proof on that issue.  Given that, the court further concludes that the proposed class is improper because individual issues of proof of revocation would also predominate common questions presented by the putative class.  Given plaintiff's failure to show that common questions predominate, the court denies plaintiff's motion to certify the proposed class under Rule 23(b)(3) without reaching whether plaintiff satisfied his superiority showing.

**6.      The Proposed Class Fails Rule 23(b)(2)**

If a plaintiff satisfies Rule 23(a), he or she may maintain a class action under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. Pro. 23(b)(2).

Here, the court concludes that certifying the proposed class under Rule 23(b)(2) is improper for at least three reasons.  First, "[c]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1195 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001).  Here, plaintiff requests statutory damages for each alleged TCPA violations.  FAC Prayers for Relief 1 and 2.  Because "[a] TCPA plaintiff who seeks an award of statutory damages for each alleged TCPA violation is primarily interested in monetary damages," McCurley, 331 F.R.D. at 179, the primary relief sought by plaintiff is not injunctive.  As a result, the court concludes that certification of the proposed class under Rule 23(b)(2) is improper on this ground alone.

30

Second, plaintiff seeks "injunctive relief" that would "preclude PHEAA from calling consumers with an [autodialing system] after being told not to do so." Dkt. 87 at 15. In effect, then, plaintiff is seeking an injunction that would order defendant to comply with the *prior* version of Title 47 U.S.C § 227(b)(1). The most recent version of Title 47 U.S.C. § 227(b), however, exempts calls "made solely to collect a debt owed to or guaranteed by the United States." Title 47 U.S.C. § 227(b)(1)(A)(iii).[7] Under that exemption, defendant may call plaintiff if done for the sole purpose of collecting a student loan owned by the United States. Given that such collection activity falls within the broader category of servicing federally owned debt, it appears that the conduct plaintiff seeks to enjoin is no longer unlawful under Title 47 U.S.C. § 227(b)(1). Regardless, even if such practices were unlawful, "[a] claim for an injunction that simply orders a defendant to comply with the TCPA and follow the law is not a proper [ground] for class certification under Rule 23(b)(2)." Ginwright v. Exeter Fin. Corp., 280 F. Supp. 3d 674, 690 (D. Md. 2017). In either event, then, the court concludes that certification under Rule 23(b)(2) is improper on this ground as well.

Lastly, in his opening brief, plaintiff repeatedly acknowledges that defendant has adopted a new policy that would cease autodialed calls upon a broader set of commands from recipients. Dkt. 85-1 at 11 ("Notably, both of these statements would result in the cessation of autodialed telephone calls today pursuant to PHEAA's new policy (the 'Current Policy')."). While plaintiff cites the voluntary cessation exception to the mootness doctrine, id. at 31, he fails to show how defendant's changed policy falls within that exception. Because the injunctive relief requested is itself moot with respect to defendant's existing use of the challenged systems, the court concludes that the

---

[7] "[(b)(1)] It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . *unless such call is made solely to collect a debt owed to or guaranteed by the United States*." 47 U.S.C. § 227(b)(1)(A)(iii) (eff. Mar. 23, 2018) (emphasis added).

certification under Rule 23(b)(2) is separately improper on this ground.

## CONCLUSION

For the foregoing reasons, the court denies plaintiff's motion for class certification and terminates defendant's motion to decertify as moot.

**IT IS SO ORDERED.**

Dated: February 7, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge
